THE JACKSONVILLE STREET RAILWAY COMPANY, APPELLANT, VS. ADOLPHO G. CHAPPELL, APPELLEE.

1. The Circuit Judge charged the jury as follows : "If you believe from the evidence that it was apparent to the car driver that the plaintiff when he entered the car was in a crippled condition, having to use a cane or crutches to aid him in moving about, then it was the duty of the driver to use a greater degree of care than in a common case of an apparently well and sound passenger :" Held, To be error, there being no testimony showing that it was so apparent.

2. Negligence is the failure to observe for the protection of another's

interests such care, precaution and vigilance as the circumstances justly demand, and the want of which causes him injury. Negligence cannot be presumed, but must be affirmatively proven ; and when the testimony fails to show that the defendant, in an action of damages for injury caused by it, was negligent, and that its negligence caused the injury, a new trial will be granted.

Appeal from the Circuit Court for Duval county.

The testimony is as follows :

Chappell testifies that between November 15 and 20 he walked down and took the cars at the corner of Market and Duval streets; that he entered the cars and walked to the forward end and turned to seat himself, and the car suddenly started throwing him a little sideways so that his leg struck the seat, and he fell to the floor of the car ; the driver then stopped the car, and assisted him up, and said he was very sorry, that he thought Chappell was seated. Chappell told him he should have been sure of it before he started. Chappell kept on the car and went to "the shop." Chappell was quite lame for several days, but continued to ride back and forth for four or five days, and then became so lame that he could not get into the car, and then walked home and back for several days until he was unable to walk, and had to stay at home. In reply to a question as to whether he saw the driver of the car when he hailed it to stop, and if the driver saw him after he got inside of the car and before starting the same, he says: " Suppose I must have seen driver. I beckoned and it stopped. I don't know whether the driver saw me after I got inside the car." He says he was confined to his " house and very bed " for about four months, from the effects of the fall on the car. Dr. P. E. Johnson attended him. Before the accident he made from $100 to $200 per month ; it depended on the amount of business he had. Got out about April

1, 1883, and did some stock work, which is building a boat for sale. About middle of June began on work ordered since the accident. After he began in June he made about $100 per month until November 1, 1883, since which time he has made nothing. Has made $450 since his fall. On cross-examination, he says he first made complaint to the company about March 1st, 1883, to Mr. Haines. He saw Mr. Harrison shortly after the accident, but has no recollection of telling him that he did not think any one was to blame for the accident; told him he thought he should be paid for lost time. After the accident, and before being laid up, he worked ten or twelve days, rode four or five, and then got too lame and walked to and from his shop for a few days. Can say positively that this four or five months' loss of time was due to the accident. Since it, he says, he has not been able to stand without crutch or cane, and when I was at the shop could only sit and superintend the work.

Dr. Johnson testifies that he has been attending Chappell as his physician for about ten years, during which time he has been suffering from irritation of the spine. After the accident testified to he suffered with aggravation of the disease; the aggravation was increased after the accident; they were the usual symptoms of aggravation. Has always considered the case rheumatic. The aggravation after the accident was very similar, but more severe than it had been before. On cross-examination he says he first saw Chappell about ten years ago; his case was more particularly rheumatic; he has never lost the power of locomotion during all this time. Should term it spinal neuralgia that he was suffering with. It is troublesome to cure, but not always a continued downward course. Have seen plaintiff every year since 1874; during each year he would be better and worse.

" The manifestation. of the case shows that the disease was on the increase." . The summer previous to the accident Chappell had been North and from rest and relaxation he was better than he had been before. Thinks he walked with a cane, and resumed his labors at the shop. Saw him two or three days after the accident ; there were no bruises on him. Was not told of the accident on the first visit, but was told on inquiring on the second visit after the accident. When I was called to see plaintiff he was not able to walk except from his crib to his bed. Saw him before he went North, he had been suffering more than usual. . I advised his trip ; he was suffering with general disability and more rheumatic trouble. He has labored when he was not able to. After his return from the North he was more vigorous than I had ever expected to see him, but not permanently restored ; and without continued rest from labor he would never be permanently restored. Before the accident he would get into a condition in which he could not work, and then again would be able to work.

Dr. Kenworthy, a witness for the defendant, testified that he was called to see Chappell about five or six years ago. He was then suffering from inability to use the lower portion of the body—" partial paralysis, a slow form of *myletis*, inflammation of the spinal marrow ;" in its earlier stages it is curable, but after it has progressed for a time it becomes incurable. When he called to see Chappell, as near as his memory serves him, Chappell had difficulty in moving about the house. Have repeatedly seen him since ; he afterwards became better, and at other times he was walking with crutches, and then riding in a cart; at times he would get better then worse ; this is one of the characteristics of the disease. As a rule it is a progressive disease. " I thought he never could be restored to perfect health." He could not do a day's work when witness saw him. Have

seen him in the shop when he was at work directing others; for several years back I don't think he was able to do a full day's work—a day's work as an employe.

J. O. Harrison, a witness for the defendant, testified that he is, and for three years has been, the foreman of the defendant. Does not know who the driver was at the time of the accident; suppose it was Mr. Parker; have endeavored to find him but without success. About four months after the accident had an interview with Chappell at his house. Chappell reported the case to Mr. Haines. Asked Chappell what he wanted, and he said he thought the company should pay him for the loss of time. He replied to my question as to whom he thought was to blame, that he did not think he could blame anybody. He said that he had walked up the car and before he seated himself the car started and he fell. The accident was reported to the company about March 1st, 1883. The cars have loops or bands for persons to hold to, to steady themselves. Very often persons will ride the whole distance standing.

W. W. Wheeler, a witness for defendant, testified he had been in Jacksonville about ten years, and is acquainted with plaintiff. The last time witness saw him he was crippled up, it was in 1882. He was on crutches part of the time; walked with a stick. When witness last saw him he used to go down to the shop. "I don't think he could do a day's work, but he could boss his own work; he has told me that he was a cripple."

Mrs. Chappell, in rebuttal, testifies in behalf of her husband, that she was present at the interview between him and Harrison; that C. explained how the accident happened, but did not state that he did not blame any one, but said he blamed the driver.

*Fleming & Daniel* for Appellant.

*Randall, Walkers & Foster* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The first error assigned is that the Circuit Judge erred in charging the jury as follows : " If you believe from the evidence that it was apparent to the car driver that the plaintiff, when he entered the car, was in a crippled condition, having to use a cane or crutches to aid him in moving about, then it was the duty of the driver to use a greater degree of care than in a common case of an apparently well and sound passenger." It is urged that there was no testimony " going to show " that it was apparent to the driver that the plaintiff, when he entered the car, was in such a condition as is assumed by the charge, and consequently none to base this charge on, and that, therefore, it tended to mislead the jury.

It is contended by appellant and admitted by appellee in the briefs that the only testimony as to what transpired at the time of the accident is that given by the plaintiff, Chappell. " It is also true," says the brief of the appellee, " that he does not speak directly as to his condition then. But he was not asked about it, as doubtless he would have been had he been examined on the stand instead of out of court while confined to his bed from the injuries caused by this accident, he having volunteered no testimony but confined his answers closely to the questions propounded."

The injury is alleged to have been done in November, 1882, in the city of Jacksonville. The trial took place in May, 1884, the action having been commenced in July, 1883.

In Cogswell vs. Oregon & Cal. R. R. Co., 6 Oregon, 417, it is said: " And from the evidence in this case it appears that unless he was very deaf he would have heard the whistle of the engine, and been warned of its approach in time to escape from the track, and we think that the evidence shows that his deafness was the proximate cause of the injury, and he being aware of this infirmity was guilty of gross negligence in being on the track, as he was walking laterally along it. It was a position of great danger to one who could not hear, and shows recklessness in the deceased. * * * We think that when a train is moving over a track in its ordinary speed, and a person is seen walking on the track apparently in possession of his ordinary faculties, the engineer may justly suppose he will get off the track on sounding an alarm that the train is coming ; and under the evidence in this case, if the deceased had not been deaf we think his remaining on the track was such gross negligence that no recovery could be had." In Central Railroad Co. vs. Feller, 84 Penn. St., where the plaintiff was deaf, it is said : " He was somewhat deaf, but this was *unknown* to those on the train, even if they could have supposed that he would drive on past the watch house. But he, himself, being aware of his own defect, had a greater reason for caution in advancing." In Evansville, &c., R. R. Co. vs. Hiatt, 17 Ind., 104, the court say : " If it be said that the father was old and feeble, and unable to get out of the way of the train, then we say the carelessness, the rashness, of going upon the track in front of an approaching train was still greater, and involves those who were with the old gentleman, to the same extent, in the carelessness in not preventing him from going upon the track, or at all events keeping close to him with watchfulness while he was on it." In French vs. Phila., W. & B. & R. Co., 39 Md., 574, it is held that where the employes

in charge of a railway train have given all the usual and proper signals to warn persons of their approach, they are not required to stop the train on discovering a person on the track, unless they have reason to believe that he is laboring under some disability, or that he does not hear or comprehend the signal. In the C., C. & C. R. Co. vs. Terry, 8 Ohio St., 570, it is laid down that where the party injured is an adult of ordinary mental capacity, but partially deaf, her infirmity not being known to the servants of the company, it will not increase their responsibilities as to care; nor will it excuse her from the full measure of care which prudent persons, partially deaf, but conscious of their infirmity, would ordinarily observe under similar circumstances.

As we understand the authorities, unless the representatives of the company know of or have reason to believe the existence of the disability, the company is held to no greater care than if such disability did not exist. Is there any testimony showing "that it was *apparent* to the car driver that the plaintiff, when he entered the car, was in a crippled condition, having to use a cane or crutches to aid him in moving about?" As admitted by counsel, the plaintiff is the only witness who testifies as to the accident. In reply to a question propounded by his counsel, as to whether he saw the driver of the car when he hailed it to stop, and if the driver saw him after he got inside of the car, and before starting the same, he says: " Suppose I must have seen driver. I beckoned and it stopped. I don't know whether the driver saw me after I got inside of the car." There is no testimony that the driver knew or had ever known of his condition or infirmity; there is none that the driver saw him before he got on the car, or that seeing him the circumstances or surroundings were such as to permit the driver to see the external evidence of his infirmity, or

that a sight of him would have suggested the infirmity to a man of ordinary discernment and exercising due care. There is no testimony that the plaintiff used either a cane or crutches at the time, nor that if he used a cane that the manner of its use was such as to suggest to a person the existence of the infirmity. It is true that Dr. Johnson, in speaking of Chappell having returned from the North, and being improved by his trip, says he thought he walked with a cane. This cannot be considered as proof that he used a cane on the occasion in question.

Dr. Kenworthy's testimony: that he was called to see Chappell five or six years ago, and that he was suffering from inability to use the lower portion of his body, and had difficulty in moving about the house; that he, the doctor, has repeatedly seen him since, and that he afterwards became better, and at other times, was walking with crutches, and then riding in a cart; that at times he would get better and then worse,—considered either alone, or with his other testimony, does not show either that Chappell used crutches or a cane at the time in question, or that if he ever used a cane what his appearance when using it was, or that the infirmity was or must have been apparent to the car driver that day. Although Wheeler testifies that Chappell was on crutches part of the time, and sometimes walked with a stick, he says nothing as to the particular time in point, and it is not a basis for the charge, but subject to the same criticisms that we have given the plaintiff's testimony. We do not think there is any testimony from which it could be inferred that it must have been apparent to the car driver that the plaintiff was in a crippled condition, having to use a cane or crutches to aid him in moving about, or that consequently he was called upon to use a greater degree of care than in the case of an apparently well and sound passenger. We do not think the

charge should have been given. R. R. Co. vs. Houstoun, 95 U. S., 697, 703. There is nothing in this case or presented by the testimony calling for the exercise of the "greater degree of care" contemplated by the charge. It is not meant by what is said above to impute negligence to the plaintiff as we are not dealing with that particular question.

II. Negligence is the failure to observe, for the protection of another's interests, such care, protection and vigilance as the circumstances justly demand, and the want of which causes him injury. And it cannot be presumed, but must be affirmatively proved. Brown vs. Street Railway, 49 Mich., 153.

The burden of proof is on the plaintiff to show that the defendant was negligent, and that his negligence caused the injury. Pearce on Railroads, 298. The negligence of the defendant is the gist of the action, and the absence of negligence on the part of the plaintiff is equally important. Dey vs. N. Y. Central R. Co., 34 N. Y., 9; 18 N. Y., 248.

To the liability of a railway company as passenger carrier, two things are requisite—that the company shall be guilty of some negligence or omission which mediately or immediately produced or enhanced the injury; and that the passenger should not have been guilty of any want of ordinary care and prudence which directly contributed to the injury; since no one can recover for an injury of which his own negligence was in whole or in part, the proximate cause. 2 Redfield on Railways, 240. We are unable to find in the testimony any proof of negligence on the part of the defendant, within the rules laid down as to the duty of the driver, in so far as the plaintiff is concerned, under the circumstances. It does not appear what time the driver gave him to get in the car and get seated. There is no proof to show that the time given was not

amply sufficient for a person having no infirmity to go in and take his seat, or even also deposit his pay, if such be the rule. There is no proof as to the suddenness or degree of force with which the car was started, none that there was any jerking, or that it was started in any unusual manner. 38 Mich., 506. The conduct of the driver after the mishap does not of itself indicate a spirit careless of the welfare of his passenger, nor that he had started in a manner regardless of or thoughtless as to their comfort or interest. We see no proof of such *acts* or *omissions* upon the part of the driver as show a failure to observe such care, precaution and vigilance as the circumstances demanded—in a word, no affirmative proof of negligence. When we ask where is the proof of negligence, what are the doings, and the manner and mode or time of the doings, what is the omission showing the negligence, the record does not present them. It is not necessary to establish negligence on the part of a plaintiff to relieve a defendant from the same charge. The mere fact that an accident has occurred does not prove negligence in the defendant. The plaintiff must show that the accident was caused by the defendant's negligence; till this is done the defendant may remain passive at the trial.

A new trial is awarded.