FLORIDA RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. D. B. STURKEY, *Defendant in Error*.

1. A party has no right to complain of a portion of the charge of the court upon a particular feature of the case when the charge taken as a whole is more liberal to him than the evidence warrants.

2. Negligence is the failure to observe for the protection of another's interests such care, precaution and vigilance as the circumstances justly demand, and while railroad trainmen are not usually bound to foresee or watch for the wrongful presence of any person upon the track, yet if experience has shown that at certain points persons are constantly thus entering upon the track, and it appears that the company has acquiesced in the use thus made of the track, such persons if injured, as the proximate result of the trainmen's failure to use ordinary care to keep watch for them may recover damages, if the trainmen could have seen them without difficulty had they kept a reasonable watch or lookout, even though in fact they did not see them; especially is this doctrine applicable to a backing train.

3. In this case we see no reason for disturbing the verdict as the jury evidently apportioned the damages in proportion to what they found to be the negligence of the respective parties as the statute authorizes to be done.

This case was decided by Division B.

Writ of Error to the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*Carter & McCollum,* for plaintiff in error.

*Humphreys & Harrell,* for defendant in error.

HOCKER, J: In August, 1907, D. B. Sturkey brought an action in tort against the Florida Railway Company in the Circuit Court of Suwannee County for damages on account of personal injuries sustained by him in consequence of being struck and knocked off the track of said railway at Porter's Station in said county, whereby he was severely injured, bruised and wounded, from which injuries he was more or less permanently disabled, so as not to be able to follow his usual vocation of a silversmith. It is alleged and proven that there was a saw mill located at the said station on the line of said road and close to the track which employed a large number of hands. It is also shown that this track had been used considerably by pedestrians. There was a commissary or store on the opposite side of the track from the mill, and a little north of it, and a crossing over the railroad track about 850 feet south of the commissary and also south of the mill. Mr. Bailey's house, at which Mr. Sturkey had been living for some months, was southwest of the crossing, and not very far from it, on the same side of the railway track as the commissary. Mr. Sturkey was about 60 years old and afflicted with rheumatism. There was a switch and sidetrack for the use of the mill directly in front of it, and a water tank on the main line just south of the switch, and in front of the mill. Mr. Roy Helton owned the mill at Porter's Station. He got logs for his mill by means of log trains. There were three or four log trains a day. The log train carried two

car loads of logs a day to Mr. Porter at Live Oak. The train that struck and injured Mr. Sturkey was headed for Live Oak, and before leaving for Live Oak it backed down to the water tank for water. In backing down to the tank about 4 o'clock in the evening of the 31st of December, 1906, the log train struck Mr. Sturkey and injured him. Mr. Sturkey had been to the commissary for some baking powder for Mrs. Bailey, and in returning came down the railway track. There was a dirt road direct from the commissary to Mr. Bailey's house, but it was a sandy road, and many persons used the track. Mr. Sturkey had been advised by his friend Mr. Bailey not to walk on the track.

It was alleged in the declaration and proven that there was no watchman or lookout on the train that in backing down to the tank struck Mr. Sturkey. The engine was in charge of a fireman who says he blew the whistle and rang the bell when he started to back down to the tank. He says he saw Mr. Sturkey step off the left side of the track, but the cars were piled up so high he could not see him afterwards and did not know he was on the track. He could have stopped the train in ten feet by putting on the lever. Mr. Sturkey was walking down this track and while he heard the grating of the wheels on the track, did not hear the whistle or bell, although he says his hearing was good. There was proof that the fireman in charge of the engine and train was not very careful in blowing the whistle and ringing the bell.

The plaintiff proved he was badly injured, whereby he lost the use of his right arm, and could not follow his usual vocation, and that he has incurred medical bills and had suffered severely from the injury.

The plaintiff claimed $10,000.00 damages, and the jury returned a verdict for $500.00, for which judgment was entered. The case is here for review on writ of

error.  The foregoing statement gives the salient facts.

The first assignment of error questions the following portion of the court's charge to the jury: "Or if you find from the evidence that plaintiff was, at the time of his injury carelessly and negligently on said track, or roadbed of defendant, without the knowledge, permission or consent of the defendant, and was not then and there travelling along or over any public crossing or way, nor over and along any private crossing or way established or used with the knowledge or by the permission of the defendant, and that the defendant at the time of said alleged injury had no manner of knowledge or notice of the presence of the plaintiff upon its road-bed or track, then the plaintiff was a trespasser on said railroad track, and you should find for the defendant."

The court at the instance of the defendant instructed the jury that "The law does not require a railroad company to keep a lookout for trespassers, and if you believe from the evidence that the plaintiff, at the time and place of the injury was a trespasser, then the defendant owed him no duty, except that it should not be guilty of any active negligence contributing to the injury, after discovering his peril."

Under the pleadings and proofs in this case we think that the foregoing portion of the charge excepted to, as well as the instruction given were more liberal to the defendant than it was entitled to receive.  There were forty or fifty mill hands who walked from their work on this track.  Mr. Sturkey was injured fifty or sixty feet from the crossing.  Mr. Sturkey says he often saw people travel on the track.  He was injured about forty yards from where people get on and off the train.  A good many families lived around the station.  Mr. Cross, a witness for the defendant, testified that the mill hands used the track where Mr. Sturkey was hurt, and he

had "seen the public walk the track there occasionally." Mr. Bailey testified that he was an examined engineer. He seems to have worked on the main line of the railway. He says he was familiar with the rules and regulations governing the operations of trains, and that under such rules some one is required to be on the rear end of the train to keep watch out when the train is backing, and that this applies to all trains.

Under these circumstances it seems to us that the principle laid down in the case of Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, text 67, 25 South. Rep. 338, applies. In that case it is held that the duties of a railroad company with respect to care in operating its trains are dictated and measured by the exigencies of the occasion, or in the light of the conditions of things at the place where, and the time when, an accident happens.

In the case of The Jacksonville Street Railway Company v. Chappell, 21 Fla. 175, this court held that negligence is the failure to observe for the protection of another's interests, such care, precaution and vigilance as the circumstances justly demand. In the former case the court held that "in railway operation the dangerous practice of "kicking cars" or making flying switches in populous localities and near public crossings, imposes upon the company a duty to station a lookout upon the rear of the cars, the equivalent of which is not accomplished by ringing the bell."

It is said in 2 Shearman and Redfield on the Law of Negligence (5th ed.) section 471, that in running trains backwards a watchman must be put upon the rear car to look out for and warn travellers when approaching a crossing (see cases cited in Note 3.) In section 484, Id. it is said: "While trainmen are not usually bound to foresee or watch for the wrongful presence of any person upon the track * * * nor to foresee the

Fla. Railway Co. v. Sturkey.—Opinion of Court.

wrongful entry of persons upon the cars, yet if experience has shown that at certain points persons are constantly thus entering upon the track or cars such persons, if injured as the proximate result of the trainmen's failure to use ordinary care to keep watch for them, may recover damages, if the trainmen could have seen them without difficulty, had they kept a reasonable watch, even though in fact they did not see them. Especially should this rule be applied where the railroad company has acquiesced in the use thus made of its property."

It is very probable that in the instant case, if there had been a lookout or watchman on the backing train or in advance of it, as it was backing, that the plaintiff would have been warned off the track and would not have been injured. Under these circumstances we think it was a question for the jury to determine whether the railroad was negligent in not having such a lookout. Therefore we think the defendant has nothing to complain of, in the portion of the charge objected to. As before remarked, the charge was more favorable to the defendant company than it was entitled to under our law.

The only other assignment questions the sufficiency of the evidence to sustain the verdict. It is very evident that the jury thought both the plaintiff and defendant were at fault and that they apportioned the damages as they were authorized to do by the statute, which was given them in charge by the court.

We think there was evidence to sustain the verdict.

The judgment of the Circuit Court is affirmed.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C.J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.