HELEN E. DILLON, Administratrix, v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

Personal Injury; OPERATION OF CARS: NEGLIGENCE.  The employes of a freight train, engaged in switching cars, are under no obligation to assume that persons not employed in switching are between the coupled cars, and where one is thus injured, whose presence was not known to or anticipated by the switchmen, the act of moving the cars, even violently, will not constitute negligence, proximate to the injury of the person thus situated.

Same: CONTRIBUTORY NEGLIGENCE.  It is contributory negligence for one not engaged in the switching of freight cars and for an unauthorized purpose, to go between the cars being switched, and no recovery can be had for an injury thus received.

*Appeal from Franklin District Court.—*HON. J. R. WHITTAKER, Judge.

SATURDAY, DECEMBER 20, 1902.

ACTION to recover damages for death of plaintiff's decedent, alleged to have resulted from injuries received through defendant's negligence, while deceased was in the employ of defendant as a locomotive engineer.  At the conclusion of plaintiff's evidence the court directed a verdict for defendant, but on motion of plaintiff granted a new trial.  From this order defendant appeals.—*Reversed.*

*Geo. H. Seevers* and *J. H. Scales* for appellant.

*Quick & Carter* and *F. M. Williams* for appellee.

McCLAIN, J.—The evidence for plaintiff tended to establish the following state of facts:  Deceased was engineer in charge of a locomotive bringing a freight train from the north into Eldora.  Another locomotive, in charge of one Cummings as engineer, was attached to the rear end

of the same train. For the purpose of switching, the train was stopped before it reached the station; the front engine, in charge of deceased, being about two hundred feet north of the station when it was stopped. In the presence of deceased, and near enough to him so that he might have heard what was said, the conductor of the train told a brakeman to take certain cars from the rear of the train and place them at the "chute." It was evidently the understanding that this was to be done by the use of Cummings' engine at the rear, and by the use of this engine certain cars were detached from the rear of the train, and drawn north, and then shoved in upon a side track on the east side of the main track. There were two side tracks, leaving the main track at about the same place to the north of the yard, the one further east going to the stock yards and alongside of a chute where cattle were unloaded, the other, called the "house track," intermediate between the stock yards track and the main line; and on the house track were several cars coupled together opposite the place where the engine of deceased was stopped, while further south, separated from these connected cars by an interval of about eighteen feet, was another car, loaded with household goods, which had probably been placed in position for unloading; this last car being north, however, of the station. For some unexplained reason the cars which had been separated from the freight train on the main track and taken north by the use of Cummings' engine for the purpose of switching were run in upon the house track with such force that the cars standing on the house track were suddenly knocked or driven about thirty feet south upon the house track, with great force and violence.

It appears that the deceased was between two of the cars which were coupled together standing on the house track at the time they were suddenly moved, and about ten or twelve feet from his engine, and that by the motion

of these cars he was thrown down, and received the injur‑
ies from which he soon after died.   No one saw deceased
leave his engine and cross to the cars on the house track
or go between them.   The fireman of the engine, but a
few minutes before the accident, saw deceased at the
engine, and plaintiff offered to prove by him that deceased
made a remark indicating the necessity of urinating,
which testimony, however, was not admitted.   Evidence
was admitted showing a custom on the part of railroad
employes to go between cars standing on the track about
where these cars were situated, and at similar places, for
the purpose of urinating; but there was no evidence that
any such custom or practice was known to the officers of
the defendant road, or approved by them.   It may be said,
also, in this connection, that there was some evidence
tending to show that when deceased was taken from under
the freight car where he was injured the front of his
trousers was unbuttoned.   It was shown that there was a
water-closet for the use of employes and others situated
about twenty feet west of the north end of the station,—
that is, across the main track from the station,—and that
this water-closet was sometimes open and sometimes
locked, but when locked access to it could be secured by
·applying at the office in the station for the key.

The station agent testifies that about five minutes
before the accident he passed down along the east side of
the cars standing on the house track, and met deceased
coming north on the same side of the cars, having come
across the house track at the opening between the cars
which were coupled together and the car containing the
household goods; but the witness did not see deceased go
between the standing cars, nor cross over to the west side
of the house track, where he was when injured.

Testimony bearing on the violence with which the
cars were thrown along south on the house track was
given by a person who, under the direction of the

station agent, was opening the car of household goods for the purpose of looking at the goods contained therein, it appearing from such testimony that this car was violently struck by the other cars and pushed against it from the north, and moved some distance.

The motion to direct a verdict for defendant, which was sustained, was based on the want of evidence to show that defendant was guilty of any negligence proximate to the injury to deceased, and also the want of evidence to show that deceased was free from contributory negligence, as well as on affirmative evidence that deceased was guilty of contributory negligence, as appears from the testimony of witnesses summarized as above. Plaintiff's motion for a new trial was predicated on the exclusion of the evi- dence offered tending to show what the deceased said to the witness just before the accident as to the necessity of urinating, the admission of the testimony of certain wit- nesses, not above referred to, that employes who went between standing cars for the purpose of urinating as- sumed the risk in doing so, and alleged error of the trial court in sustaining defendant's motion to direct a verdict on the different grounds set forth therein. Errors are now as- signed on the action of the trial court in sustaining this mo- tion for a new trial on the various grounds alleged therefor.

We shall not consider the alleged errors of the trial court in the exclusion of the testimony of the fireman as to what deceased said just before the accident nor as to the admission of testimony of witnesses as to assumption of risk; for, in view of the testimony which was received bearing on the question of defendant's negligence, and the acts of deceased tending to show contributory negli- gence, we think the result was not, and could not have been affected either by the exclusion of evidence tending to show the purpose for which it is claimed deceased left his engine and went between the cars standing on the house track, nor by the admission of the mere legal

conclusions of the witnesses as to whether they assumed the risk when they went between the cars standing on the track for the purpose of urinating. As it seems to us, if the evidence shows beyond dispute, either on the one hand that there was no negligence of the defendant proximately connected with the injury to deceased, or, on the other, that the evidence showed contributory negligence of deceased, or want of due care on his part, then the motion to direct a verdict was properly sustained, and the motion for a new trial should have been overruled.

The acts of the employes of the defendant in throwing the cars violently along the house track are not to be abstractly considered as constituting negligence in themselves. So long as the railroad company, through its employes, was operating its cars without danger to persons toward whom it owed some duty, it is no affair of any one else whether they were operated violently and unskillfully or not. It is only when the acts complained of appear to have been negligent with reference to the rights or safety of persons who complain thereof that any question of negligence arises. It would hardly be contended that if a tramp were stealing a ride in a box car, where he was without the knowledge of employes, and without their having reason to know of his presence there, that he could recover damages because he was injured by reason of the negligent, unskillful or even reckless handling of the cars by such employes. We are to determine whether there was negligence of defendant's employes by considering what relation there was between their acts and the safety of or peril to one injured thereby; and, without regard to the question of contributory negligence, it is clear that any negli.ent handling of defendant's cars by its employes was not the proximate cause of an injury resulting therefrom, unless the safety of the person in whose behalf complaint is made was a

*1. OPERATION: of cars; negligence.*

matter with reference to which the defendant and its employes were charged with some duty.

Cases cited for appellee to the effect that it is negligence, rendering the railway company liable, to operate its cars, even in switching in its own yards, so as to injure persons who are walking beside the switch track or on such track, are not in point, for in all of them the conclusion reached is based on the assumption that the employes were bound to know that persons might be alongside or in front of such cars as moved, and that the fact of moving them, or the method of doing so, might place such persons in peril, —a peril which the employes were bound to look out for, and use care to prevent. But we cannot think that the employes of a railroad company, operating a train on a sw' h track in its yards, and moving the cars of the train, or other cars against which they are pushed or driven, are under any obligation to assume that persons may be between cars which are coupled together. If they have no reason to anticipate that any one will be between such cars, and have no knowledge that any one is there, the act of moving such cars, even violently, or in an unusual manner, will not constitute negligence proximate to the injury of a person thus situated. It is not necessary to cite and discuss the cases which appellant refers to, for we find on examination that none of them are analogous, in the important matter which has just been pointed out, to the case before us.

A consideration of the question as to whether the evidence fails to show due care for his own safety on the part of deceased, or affirmatively shows contributory negligence on his part, leads to the same result. It must be, as matter of law, contributory negligence, for any person, without reason or excuse for doing so, to go between cars standing on a side track, which, in the operation of the business of the railroad company, may be moved. We do not think it is material

2. SAME: contributory negligence.

whether such person has reason to suppose that the cars will be moved or not. He is bound to know that, in the very nature of things, they are on the track for the purpose of being moved, and is negligent in being between them when they are moved. It is, of course, necessary and proper to go between cars which are coupled together, standing on the track, whether coupled to an engine or not, for some purposes. A brakeman must do so for the purpose of uncoupling; an employe engaged in the inspection or repair of cars may properly do so in the prosecution of the business for which he is employed. There may be other circumstances rendering such an act proper, and not negligent; but there is no evidence in this case to indicate that deceased went between the cars for any proper purpose, or any purpose justifying him in incurring the risk involved in doing so, unless it was proper to do such act for the purpose of screening himself from public view while engaged in urinating. Undoubtedly, a railroad company is bound to furnish its employes reasonable opportunities for responding to the calls of nature. See (by way of illustration,) *Pennsylvania Co. v. McCaffray*, 139 Ind. 430, (38 N. E. Rep. 67, 29 L. R. A. 104); *Railroad Co. v. Martin* (Ind. App.) 39 N. E. Rep. 759. As to this matter the evidence is uncontradicted that a water-closet was provided for the use of employes, access to which could be secured in a reasonable manner. There is nothing to show that deceased did not have reasonable time and opportunity for using this water-closet. It was less than 250 feet from where his engine stood, and in plain sight, and there is not the slightest showing that there was any emergency, in connection with the immediate moving of his engine, which could have deterred him from taking advantage of the accomodations thus provided. Indeed, if the testimony of the station agent as to where he saw the deceased just before the accident is to be believed, then deceased actually went further to reach the place

where he received his injury than he would have been required to go in order to reach the water-closet. Giving all the testimony introduced or offered for the plaintiff all the weight to which it can possibly be entitled, we think it shows without question contributory negligence on the part of deceased.

Our conclusion is that there was no evidence of negligence on the part of defendant's employes, and that there was direct and uncontradicted evidence of contributory negligence on the part of deceased, and that, therefore, the motion to direct a verdict for defendant was properly sustained, and the motion for new trial should have been overruled. The action of the lower court must therefore be REVERSED.

WEAVER, J.. takes no part.