NICK LAMBRAKIS, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

**RAILROADS:** Negligence—Moving Cars Without Signals or Lookout.
1   The act of a switching crew in running a car into and upon the grounds of an industrial plant without audible warning signals or lookout, and with knowledge that the employees of the plant may be on and about the tracks, justifies a finding of negligence.

**NEGLIGENCE:** Contributory Negligence—Passing Between Cars.   An
2   employee of an industrial plant is guilty of negligence *per se* when, knowing that he is forbidden to so do, and without reliance on any warning signals, he passes between slightly separated cars when he has reason to know that an engine may be present at any moment to couple the cars.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

SEPTEMBER 20, 1924.

ACTION to recover damages for wrongful death of Athanasios Leoleos.   At the close of plaintiff's evidence, verdict was directed for defendant.   Facts appear in the opinion.   Plaintiff appeals.—*Affirmed.*

*Hughes & Dolan,* for appellant.

*J. G. Gamble, R. L. Read,* and *Sawyer & Norman,* for appellee.

ARTHUR, C. J.—I.   Leoleos, plaintiff's intestate, was employed by Hubinger Bros. Company, proprietors of a cereal plant in Keokuk, Iowa.   An industry track, a spur from the

1. RAILROADS: negligence: moving cars without signals or lookout.

Burlington railroad, enters the yards of the plant from the east, and runs practically straight east and west between two large buildings of the plant.   This track is used by Hubinger Bros. Company to bring coal to the plant.   Under the track, between the buildings, is a hopper for the reception of

coal. From the hopper the coal is conveyed to the boiler house on the north side of the track. Cars of coal brought into the plant were customarily spotted by the railroad west of the hopper, and as coal was required, a car of coal would be shoved east over the hopper and emptied, and then moved farther east and left standing, to be later taken away by an engine. At the time of the accident hereinafter related, there was a loaded car of coal standing on the coal track over the hopper, and the two empty cars standing immediately east of the hopper which had been placed there by employees of the plant. These two cars were not coupled, and were standing so that there was a space of from 15 to 24 inches between the coupling blocks.

Leoleos' work was in and about the boiler room, and it was also a part of his duties to look after and keep the coal hopper from becoming clogged, and also to keep the surface of the ground about the hopper clean. To keep the hopper from clogging, he used a pole to poke the coal down into the hopper, and for that purpose worked on both sides of the hopper,—that is, on both sides of the track where the hopper was located. If he wished to pass from one side of the track to the other, he could go around the cars standing on the track, or through between the cars. On account of curves in the track, the cars stood uncoupled a short distance apart. In attempting to pass between the car standing over the hopper and the car immediately east of it, Leoleos was crushed between the bumpers and instantly killed. The occasion of the cars' being bumped together was that a switch engine of defendant railroad's came into the yard, pushing an empty car ahead of it for the purpose of coupling onto the empty cars standing on the coal track. As the cars came together by force of the engine, a scream was heard, and upon investigation by employees of the plant, the body of Leoleos was found between the two empty cars. Leoleos had been caught between the coupling blocks of the two cars as they came together. No one saw the accident. From the record it may fairly be said that Leoleos was passing from the north side to the south side of the track.

At the close of plaintiff's testimony, the trial court sustained defendant's motion to direct a verdict generally, dismissed

plaintiff's petition, and thereafter denied a motion for a new trial. In substance, the motion was that the evidence failed to show that plaintiff's decedent was in the exercise of due care and caution at the time and place of the accident; that the evidence fails to show that defendant was guilty of negligence charged against it, as contributing to or causing the accident.

II.   Errors relied upon by appellant for reversal are:

(1)   That the court erred in holding that appellee railroad company was not negligent in going onto the coal track in the manner it did, without giving notice and warning, and in violation of the rules adopted by the American Railway Association relative to switching and moving cars on industry tracks.

(2)   That the court erred in holding that plaintiff's intestate was guilty of contributory negligence in crossing the coal track by going in the space between the couplers in the manner and at the time he did.

III.   The evidence shows that Leoleos had been in the employ of Hubinger Bros. Company for some time. It does not appear just how long. The yard foreman testified:

"The men employed by Hubinger Bros. pass back and forth between these cars every day, although there are signs forbidding them to go between the cars."

An employee at the blacksmith shop of the plant testified:

"Never saw any signs posted prohibiting employees crossing or going between the tracks."

Several employees testified that the employees frequently crossed the tracks by passing between the cars. The yard foreman testified:

"I passed between the very cars that caused Leoleos' death, about ten minutes before the accident happened. The space was not more than 13 or 14 inches between the bumpers. Had to squeeze through sideways."

The evidence shows that the switching crew came into the yards with an engine to take out the empty cars between 9 and 10 o'clock in the morning, and that, on the morning of the accident, the switch engine came into the yard shortly after 9 o'clock.

Miles Arnold, employed by the Hubinger Bros. Company
to unload cars, testified that he saw the Rock Island switch en-
gine which moved the empty cars which caused Leoleos to be
crushed between them, come into the yards, and that he did
not see any switchman or brakeman ahead or on the car which
the engine was pushing; that he saw the engine with one car in
front, coming in on the coal track; that the switchman who
brought the cars in did not go along the coal track ahead of the
shoved car; that there was no one on the car; that there· were
two empty cars on the coal track and another partly on the
hopper; that they were not coupled together,—there were from
12 to 15 inches between the couplers; that the cars never did
couple together, on account of the sharp .curve in the track;
that the cars "had to have a pretty good jolt to make them
couple;" that from where Leoleos was injured the engine could
not be seen, because of the curve in the track and the cars on
the track and the car on the cinder track; that the cinder track
is just north of the coal track. The witness testified that he did
not hear any bell on the engine ringing before the accident, on
account of the noise.

C. W. Bailey, a brakeman on the Burlington road and en-
gaged in switching cars in the yards at Keokuk, Iowa, identified
a book as containing "Standard Code of Train Rules and Block
Signaling and Interlocking Rules, and was issued and adopted
by the American Railway Association November 17, 1915, and
to take effect July 1, 1916, for switching and moving cars. These
rules apply to switching and handling cars on all railroads."

Appellant offered in evidence Rule 103 of the book iden-
tified by the witness, which reads:

"When cars are pushed by an engine, except when shifting
or making up trains in the yards, a trainman must take a con-
spicuous position on the front of the leading car." Plaintiff
also offered Rule 911, which reads:

"Before moving cars on stationary or industry tracks, train
and yardmen must know that the cars can be moved with
safety."

Witness further testified:

"On switching or moving cars, whenever we undertake to

put a car in an industry plant, the way is to notify the foreman of the department that we are going in, and one of the brakemen, before the car is moved, goes the length of the cars and notifies the men who are working around the cars that the car' is to be moved; and when the car is moving, one man always walks along or rides ahead on the front car.''

Giving to the evidence the probative force and proper inference which must be accorded to it in favor of appellant, on the motion of appellee to direct verdict in its favor, which motion was sustained, the evidence fairly shows that there was no warning given by the crew of the switch engine that the empty cars were about to be moved, other than perhaps the ringing of the engine bell, which was not heard on account of the noise in the yard. One witness testified that there were signs forbidding employees to go between the cars, and another witness testified that he never saw any signs posted prohibiting employees from crossing the track or going between the cars. The testimony of the yard foreman that ''there were signs forbidding them to go between the cars'' would outweigh and be convincing against the testimony of the other witness that he had never seen such signs posted. But however that may be, as to whether such signs were actually posted or not, the record discloses that the Hubinger employees, including the decedent, continually passed between the cars, in going from one side of the track to the other. They could avoid passing between the cars by. going around some distance. But the testimony fairly shows that it was the custom to pass through the narrow openings between the uncoupled cars standing on the track. We think nonobservance of the rules of the American Railway Association introduced in evidence, pertaining to warning before moving cars on an industry track, not sufficient, in and of itself, to establish negligence on the part of defendant company in this case. Particularly is this true when it is not shown that the defendant railroad had adopted or followed such rules, or that Leoleos knew of any such rules or custom and relied thereon. There is no evidence that decedent or any of the Hubinger Bros. employees knew of or relied on any such rule or custom. Counsel for appellee rely considerably upon our holding in *Dillon v.*

*Iowa Cent. R. Co.*, 118 Iowa 645, for support of their position that the defendant, through its engine crew, in coupling onto and moving the cars on the coal track, was under no obligation to assume that Leoleos or any other person not employed by it in switching would pass between the cars; and that where, as in this case, the presence of Leoleos between the cars was not known by the switchmen, the act of moving the cars, without warning, did not constitute negligence. We must concede that the instant case is not readily distinguishable from the *Dillon* case. However, we think there is difference in the facts and circumstances of the cases sufficient to render the *Dillon* case not controlling in the instant case. In the *Dillon* case, the switching crew had no reason whatever to anticipate the presence of the injured man between the cars. In the instant case, we think it cannot be said, as a matter of law, that the switching crew had no reason to anticipate that employees of the Hubinger Bros. Company would be passing between the cars. While the yard foreman of Hubinger Bros. Company testified that there were signs posted forbidding the employees to pass between the cars, his testimony and that of other employees clearly shows that it was the habit of the men to pass back and forth between the cars in going from one side of the track to the other. It does not affirmatively appear that the switching crew knew that the Hubinger Bros. employees were in the habit of passing between the cars, but it is a reasonable inference to be drawn from the facts that they were aware of such habit or custom. At least we think it may not be said, as a matter of law, that the switching crew were not aware of such habit. Under all the facts and circumstances shown in evidence, we think the question of whether or not appellee company was negligent in moving the cars without warning was one for the jury.

IV. We now come to consideration of contributory negligence on the part of Leoleos. Does the evidence fail to show, as a matter of law, due care on the part of deceased for his own safety, or affirmatively show contributory negligence on his part? As hereinbefore said, in discussing negligence charged against appellee, we think the evidence convincing that there were

2. NEGLIGENCE: contributory negligence: passing between cars.

posted signs forbidding employees of the Hubinger Bros. Company to go between the cars. Witness Glasgow, general yard foreman of Hubinger Bros. Company, so testified. The only other testimony on that point is that of Inden, an employee in the blacksmith shop, who merely testified that he never saw any such signs posted. From the nature of his employment, Leoleos must have been familiar with the switching of empty cars. The evidence shows that the switch engine came into the yards daily between 9 and 10 o'clock in the morning, and coupled onto the empty cars standing on the track, to take them out of the yards. It was about the time when the switching was customarily done, when Leoleos attempted to cross the track by passing between the cars. Where he attempted to pass, the coupling blocks of the cars were only a short space apart,—witnesses say, from 15 to 24 inches. The very proximity of the coupling blocks between which he attempted to pass was a warning of danger. It was obvious that the slightest movement of either car would be likely to injure him. The situation would seem to exclude any presumption of due care on the part of Leoleos. As bearing somewhat on this point, see *Martensen v. Chicago, R. I. & P. R. Co.,* 60 Iowa 705; *Brown v. Chicago, R. I. & P. R. Co.,* 69 Iowa 161; *Haggerty v. Chicago, St. P. & K. C. R. Co.,* 90 Iowa 405; *Baker v. Chicago, R. I. & P. R. Co.,* 95 Iowa 163.

The record is barren of any evidence showing or tending to show that Leoleos relied upon any special warning from the switch engine, or that he relied upon a switchman or other railroad employee to give warning that the cars were about to be moved, or that anyone would be present to prevent him from going into the place of known danger. The conclusion is inescapable that Leoleos, of his own volition, moved from a place of safety into a place of danger, without any attempt to ascertain whether the cars were about to be moved. We reach the conclusion that the evidence shows conclusively, as a matter of law, that appellant's decedent was guilty of negligence contributing to his injury. We think any presumption of due care which might arise from natural instinct of self-preservation, conclusively overcome by the physical facts, other facts, and sur-

rounding circumstances shown in evidence. The trial court did not err in directing verdict for appellee on that ground.

The judgment of the trial court is, therefore, affirmed.— *Affirmed.*

EVANS, PRESTON, and VERMILION, JJ., concur.