LAURA WAGNER, Administratrix of the Estate of Lawrence Wagner, Deceased, Appellee, v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

Railroads: INJURY TO TRESPASSER. Where a railway company
1 provides a space between its tracks on its own ground for teams and pedestrians, a person at any other place than that so.provided is a tresspaser, for whose injuries there can be no recovery.

Occupancy of Tracks: RIGHT TO CROSS. The actual use by a rail-
2 way company of its tracks, so long as in use, is a suspension of the right of the public to cross; and one injured in attempting to cross during such occupancy cannot recover.

Use of Tracks by Public: LICENSE: DUTY OF COMPANY. Railway
3 tracks are known places of danger and the simple use will not create an implied license to occupy the same for public travel. but there must also be a consent of the company either express or implied; and unless the company knows or has reasonable ground to anticipate such use, it is not bound to keep a lookout for travelers.

*Appeal from Story District Court.*—HON. J. H. RICHARDS, Judge.

SATURDAY, JANUARY 23, 1904.

ACTION at law to recover damages for the death of Lawrence Wagner, deceased, due, as is alleged, to the negligence of the defendant in the operation of one of its trains in the city of Des Moines. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*James C. Davis* for appellant.

*G. A. Underwood* for appellee.

DEEMER, C. J.—Plaintiff's intestate, a little boy four years of age, was run over by a train being operated by de-

fendant in its switchyards in the city of Des Moines, receiving injuries from which he almost instantly died. The accident occurred on property belonging to defendant abutting on East Fourth street, between Locust and Grand avenue, at about six o'clock in the evening of May 11, 1899. Defendant is sought to be held liable by reason of the following charges of negligence: "That they moved said cars and trains backwards without giving any signal or warning; that they did not have any conductor or brakeman or other person at rear of said cars and trains to see or give warning of danger; that they suddenly moved cars which had been standing there on a side track for a long time without any warning or signal at or near the place of danger; and that the defendant company and its agents and employes were also negligent in not having any guard or switchman at the crossing of Locust street at the time of the injury, and no flagman to watch out and guard against accidents." There is no doubt that the boy, when he received his injuries, was upon property belonging to the defendant, and that, in the absence of proof of some circumstances showing that it was under a duty to look out for the child, there can be no recovery.

East Fourth street in the city of Des Moines, between Locust and Grand avenues, is largely occupied by the defendant company with its tracks and switches. What are known as lots seven and eight in block nine, East Fort Des Moines, lying immediately east of East Fourth street, are owned by the defendant company, and the east sides thereof, save a strip between the two lots which is used as an alley, constitute a part of the defendant's switchyards. There is nothing to mark the dividing line between these lots and Fourth street. The east track in these yards runs very close to a building in lot eight known as the "Sinclair Building." A platform for loading and unloading goods from cars into the Sinclair Building was in existence at the time the accident occurred. This Sinclair track extended down to the line of Locust street, which is south of Grand avenue, where it stops. Just west of this first track, which was known as the "Sinclair

track," is a driveway which lies between it and the next track west, which is known as the "scale track." This was for the purpose of reaching the alley between lots seven and eight. No means were provided for crossing the scale track from east to west, or *vice versa*, but a crossing was provided over the Sinclair track in order to have access to the alley. West of the scale track was a cinder path, which was used more or less by foot passengers, and west of this was the main line track of the defendant company. West of that were more tracks, and between them paths which were used by foot passengers. What were known as the "old main line track" and the one just west of that were on private property of the defendant company, and not in Fourth street, but there were tracks west of these which were in Fourth street. Before the time of the accident in question the first cinder path for foot travel was west of the scale track, but there was a driveway just east of it, and between it and the Sinclair track. There were no crossings provided over these tracks save at Locust street and Grand avenue, except the crossing over the Sinclair track at the alley between lots seven and eight. The child was struck by a car on the scale track about midway between Locust street and the alley between lots seven and eight to the north. The space between all the rails was simply surfaced in, as they are in the country at large, but between the tracks, or some of them, were surfaced cinder paths for people to travel upon. At the time of the accident defendant's employes were engaged in switching a work train onto the scale track for the purpose of allowing a passenger train to pass south on the main line track. There were three or four cars on this scale track south of the alley, and the work train was composed of flat cars. It came down onto the scale track, engine first, striking the cars which had been left there, and the south one ran over plaintiff's intestate, who was either under the last car south or close to the end thereof when the train struck the standing cars, or, as defendant contends, under the third car from the south. There was no trainman, conductor, flagman, or switchman at the

end of the train.   The boy's body was found between the
two wheels of the north truck of one of the cars.   There was
something of a controversy about this, but the jury was auth-
orized to so find.

There is some question in the evidence about the position
of the child when he was struck—that is to say, as to whether
he was under the south car or under the third one from the
south, and as to the kind of car which was nearest Locust
street.   The jury found specially that the boy was not under
the third car north, as we understand it, and with that find-
ing we cannot interfere.   But there was no finding as to his
position under the south car.   No one saw the child until
after it was struck by the car, and the only evidence regard-
ing the conduct of defendant's employes is as follows.

Mr. Dorran, the conductor, said:   "As we approached
Grand avenue, walking on top of the cars, my view was not
obstructed.   I looked toward the west side, clear down to
Locust street.   We were approaching Grand avenue.   There
was no child there towards Locust street.   I did not see any."

Mr. Braiden, superintendent, who was on the train
said:   "At and just before this last coupling was made I
looked south towards Locust street.   There was nothing to
obstruct my view along the west side of that string of cars
between there and the next crossing below.   I looked almost
constantly.   *   *   *   I did not see any children along the
side of the cars; there was none."

Mr. Rimmer, the engineer, said:   "As we approached
and passed over Grand avenue I was looking south and could
see clear down to the north edge of Locust street.   I was
looking along the west side of the standing cars on the track.
There were no children in sight between me and Locust
street and near the cars, that I could see."

Mr. Hershire, the fireman, said:   "When the train ap-
proached Grand avenue crossing, I was on my seat box.   We
were going south.   The track south was clear at that time.
I had a clear view down to Locust street.   I was looking

out to see what was ahead of me. There were no children there, not that I could see. It was my business to look out."

It will be observed that there was no crossing over the scale track, but that there were several footpaths running north and south parallel with it, from Locust street to Grand avenue, which were reasonably safe for public travel, and which were frequently used for that purpose. Plaintiff's intestate was not using one of these paths at the time it was killed, but was evidently under the cars, or was very close to them, at the time he was struck. Defendant's evidence tended to show that it was under the third car from the south, crawling along on its hands and knees, trying to get out from under the cars by going toward the west. There was also evidence tending to show that the train which coupled onto these cars was moving at a rate of speed not greater than two miles per hour, and that the cars, when struck, did not move to exceed four feet.

Defendant asked this instruction: "You are instructed that if you should find from the evidence that the general public, with the knowledge of the railway company, had been

1. Injury to trespasser.
using certain spaces between the tracks from Locust street to Grand avenue as driveways and footways at and prior to the time of the accident in question, yet such finding would not authorize plaintiff's child to be at any other place or places than those named, or to be under defendant's cars or south of its cars between the rails of the scale track; and if you find from the evidence that it was under the defendant's cars, or at or near the south end of them, between the rails of the scale track, at and just prior to its injury, and the defendant's employes did not see it in time to prevent the accident, then it was a trespasser, and plaintiff is not entitled to recover, and your verdict must be for defendant."

This instruction should have been given. Looking at the case in the most favorable aspect for the plaintiff, the invitation extended to the public was to use the cinder paths, and not the space between the rails, for the purpose of travel. As

the place where the plaintiff's intestate was injured was private property of the defendant company, the child had no right to be at any other place than where he was invited to come.   Had he been at this place, the injury would not have occurred.   The question is not one of contributory negligence, but rather of duty on the part of the defendant.   The place where plaintiff's intestate was injured was private property of the defendant.   The boy had no right to be there except upon invitation, and the defendant was not required to keep a lookout for persons at any other places than where they were invited to come.   Having provided a place for people to walk, it had a right to assume that those who availed themselves of its invitation would confine themselves to the places set apart for their use.   This is the doctrine announced in *Heiss v. Railway Co.,* 103 Iowa, 592; *Phillips v. Library Co.,* 55 N. J. Law 307 (27 Atl. Rep. 478); *Furey v. R. R. Co.,* 67 N. J. Law 270 (51 Atl. Rep. 505.)

Instruction No. 8 asked by defendant which reads as follows, should also have been given: "You are instructed that at and just prior to the time of the accident in question **2. OCCUPANCY** defendant was in the actual use and occupancy **of track:** **right to cross.** of its scale tracks, where its cars were standing, and that such use and occupancy, while it lasted, amounted to a suspension and revocation of any right, if such you find there was or had been, in the public to cross said track when so occupied; and if you find from the evidence that plaintiff's child attempted so to do by crawling under defendant's cars, and was killed, while so doing, by the movement of the cars, defendant would not be liable, and your verdict should be for the defendant."

It needs no argument to demonstrate the correctness of the proposition of law therein announced, but see *Central R. R. v. Rylee,* 87 Ga. 491 (13 S. E. Rep. 584, 13 L. R. A. 634).   This quotation from that opinion, it seems to us, is eminently sound.   "It would be unreasonable to hold the company bound by an implied license or permission when the act is of such a negligent character.   It would be unreasonable to

hold the company bound by an implied license when it is occupying the track with its own cars. It would be unreasonable to hold that it had agreed that others might have a joint occupancy of the tracks at the same time the company was using them for its own purposes. The joint use by the company and by the public of the tracks at the same time would be so inconsistent and so dangerous that the law will not imply a license from the company to the public for such joint use. The placing of stationary cars in its yards on the tracks where people are accustomed to pass is notice to the public not to attempt to pass while the cars remain, and, if a person undertakes to pass under the cars, he does so at his peril."

Some of the propositions embodied in these instructions were given by the court in its charge, but not all; and, as the case turned almost wholly on the duty owing the child by the railway company, the issue should have been fully presented.

II. The doctrine of implied license to the use of its tracks by the public in general was not presented as fully as it should have been in the instructions given by the court.

3. USE OF TRACKS by public: license: duty of company. The rule is well expressed in *Thomas v. R. R. Co.*, 103 Iowa, 659, and need not be repeated. In other words, something more than mere use by the public must be shown in order that a license to use the space between tracks for the purpose of travel may be inferred. Such use, with other things, make out a license, but use alone will not do so. There must be a consent to that use, either express or implied. In this case there was evidence that defendant had time and again ordered people, particularly children, off its property at or near the place in question, and endeavored, so far as it could, to prevent the use thereof for the purpose of travel. It must be remembered that this property was all open, that defendant provided safe and convenient walks for people to travel upon in Fourth street, and that whatever license it may have given to the public was not to travel over or upon the scale track, but in

a space west of that and between it and the main track.  Had plaintiff's intestate been in that space, this sad accident would not have occurred.  True, there was a wagon track east of the scale track, but no one contends that the defendant ever impliedly invited foot passengers to use this.  They were repeatedly warned off it, and there is no evidence that it was so used by foot passengers as to justify a conclusion that there was any license to use it.  Moreover, it had provided walks which it invited the public to take.  This in itself rebuts the notion that it assented to the use of the space between its tracks for the purposes of public travel.  It must always be remembered, in cases of this kind, that a railway company is not an insurer against accidents.  Recovery can be had from it when, and only when, it has neglected some duty which it owed to the individual who is injured.  Two things are necessary to make out a cause of action—one a right in the plaintiff, and the other some wrong or breach of duty on the part of the defendant.  Railway tracks are known places of danger.  They are not made for the use of foot passengers, and ordinarily a railway company has the right to assume that they will not be so used.  It certainly may assume that no children are playing about or under its cars, and unless it knows or has reasonable grounds to anticipate their presence it is not bound to look out for them.  When it grants a license it is only bound to the extent of its grant.

The instructions given by the trial court were in the main correct, but, for the reasons pointed out, the judgment must be REVERSED.