WILLIAM ANDERSON, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

No. 41679.

JUNE 20, 1933.

Lane & Waterman, James W. Bollinger, and Chamberlain & Chamberlain, for appellant.

Cook & Balluff, and J. G. Gamble and A. B. Howland, for appellee.

ALBERT, J.—The defendant is the owner and operator of a double track railroad running east and west through the town of Buffalo, Iowa. Paralleling said railroad on the north side is a paved highway. Dolese Bros. Company operates a stone quarry about a mile west of the town of Buffalo and just north of the aforesaid paved highway. Some distance west of the stone quarry buildings a spur track runs north from the defendant's main line across the pavement for a distance of about 150 feet where there is another switch, and from thence on there are two parallel tracks to the rock crushing plant. This spur track, with its subdivisions and numerous other tracks, was on the property of the quarry company. The Rock Island and the Milwaukee Railroads used this spur track to shunt empty cars into the rock crushing plant and to haul out loaded cars. None of the railroad tracks on the property of the quarry company were connected at their east end with the tracks of the railroad company. The trains of the defendant cut off their engines and enter on this spur track to put empties or get loaded cars at different times during the day, but the spur track was used mostly by a local train which went west in the forenoon and returned in the afternoon.

On the 14th day of September, 1926, there were three coal cars standing at or about the first switch north of the pavement, about 150 feet from the main line. The deceased, Calvin Anderson, had been in the employ of the quarry company for about twelve years and was in charge of a gang of men whose duty it was to look after and repair the railroad tracks on the quarry company's grounds. For all this time he had been familiar with the operation of the defendant's trains, and the use of the cars on that property, and, of necessity, knew of the time, manner, and method the defendant company used the quarry tracks. The quarry company itself had a locomotive which it used in moving empty and loaded cars on its own property and placing them in position for the railroad company to remove them.

On the aforesaid date, at about 10 o'clock in the morning, Anderson and two helpers quit work and started to go to the crushing building about 500 feet east of the standing cars. There were several showers of rain that morning. One of the workmen had a watermelon, and while passing these empty coal cars on the spur track, the men decided to eat the watermelon and get out of the rain. They crawled under the middle car of the three and seated themselves on the north rail. Kemper, one of the workmen, was seated

within 2 or 3 feet of the east wheel of the west truck of the middle coal car. Anderson was just east of Kemper, and Bishop immediately east of Anderson. While so seated, no portion of their bodies projected beyond the side of the car or was visible to an incoming engine and crew approaching from the west. While they were under the car, a train passed on the main line south of the paved highway. There were no signs or signals at or near the west end of these coal cars to indicate that any one was under them.

Over objection they testified that they heard no bell or whistle sounded. A local freight engine of the defendant came in upon the spur track across the public highway to couple onto the west car of the string and moved all of them several feet to the east. The wheel of the coal car ran over Anderson's body and produced injuries resulting in his death in a few hours.

Anderson's two companions testified that they heard no whistle or bell before the cars were moved by the engine. One witness testified that they sought shelter under the car because of the rain, and, after they had finished the watermelon, they were waiting for the rain to stop.

The above is a summary of the evidence as set out by both the appellant and the appellee in their briefs and arguments. The action of the court in directing a verdict for the defendant is the main bone of contention on this appeal. The claim of the appellant (plaintiff) is that because the defendant failed to sound the whistle or ring the bell before it crossed the paved highway, the defendant company was negligent, and this proof of negligence made a case for the jury.

For the purpose of the disposition of the case, we will assume, without deciding, that the defendant company was negligent. The principal ground, however, on which the lower court acted in directing a verdict was that the plaintiff, by his own testimony, showed that the deceased was guilty of contributory negligence as a matter of law, and we are disposed to think the contention of the defendant in this respect,—which was sustained by the district court, —was right.

It is a fundamental doctrine that the burden of establishing freedom from contributory negligence is on the plaintiff. This pronouncement has been made so many times by this court that it is needless to cite authorities. The deceased was an able-bodied workman, 62 years of age, possessed of good hearing and eyesight. He was perfectly familiar with the method in which the railroad com-

pany did the switch work and handled locomotives and cars when on the quarry property. He, therefore, of necessity, knew that a locomotive was likely to come into the plant at any time during the morning, and also must have known that the slightest movement of the cars would jeopardize his life. While the explanation of the other witnesses for going under the car was to avoid the rainstorm, some of the other witnesses called by the appellant indicated that the storm was over when the injury occurred, and the condition of the weather was not such as to prevent the men from returning to the crusher building. Kemper, one of the men who was under the car, testified that he heard a train pass on the main track south of the paved highway, and did not know which direction the train was proceeding. This was undoubtedly the local freight, the engine of which a few moments later came into the plant. Neither Kemper nor the deceased paid any attention to the movements of this train, although they could readily have determined in which direction it was proceeding and whether it continued beyond the quarry.

The fact situation here presented is not new in this court. The case of Lambrakis v. C., R. I. & P. Ry. Co., 198 Iowa 641, 199 N. W. 994, 996, presents a similar set of facts. The accident involved in that case, in which one Leoleos lost his life, occurred on a spur track on which coal cars used by the industry were unloaded into a hopper. It was a part of Leoleos' work to see that the hopper did not become clogged, and to pick up pieces of coal which fell to the ground in the loading process. Two cars stood on the industry track near the hopper with their couplers a short distance apart. A switch engine came into the plant for the purpose of removing the empty coal cars, and as the engine was coupled onto the standing cars, a scream was heard. Subsequent investigation disclosed that Leoleos had been crushed between the couplers. There was no eyewitness to the accident. At the close of the plaintiff's testimony, the trial court directed a verdict for the defendant. This court affirmed the action of the trial court and said:

"From the nature of his employment, Leoleos must have been familiar with the switching of empty cars. The evidence shows that the switch engine came into the yards daily between 9 and 10 o'clock in the morning and coupled onto the empty cars standing on the track to take them out of the yards. It was about the time when the switching was customarily done when Leoleos attempted to cross

the track by passing between the cars. Where he attempted to pass, the coupling blocks of the cars were only a short space apart; witnesses say from 15 to 24 inches. The very proximity of the coupling blocks between which he attempted to pass was a warning of danger. It was obvious that the slightest movement of either car would likely injure him. The situation would seem to exclude any presumption of due care on the part of Leoleos. * * * The record is barren of any evidence showing or tending to show that Leoleos relied upon any special warning from the switch engine, or that he relied upon a switchman or other railroad employee, to give warning that the cars were about to be moved, or that any one would be present to prevent him from getting into the place of known danger. The conclusion is inescapable that Leoleos, of his own volition, moved from a place of safety into a place of danger, without any attempt to ascertain whether the cars were about to be moved. We reach the conclusion that the evidence shows conclusively, as a matter of law, that appellant's decedent was guilty of negligence contributing to his injury. We think any presumption of due care which might arise from natural instinct of self-preservation conclusively overcome by the physical facts, other facts, and surrounding circumstances shown in evidence. The trial court did not err in directing verdict for appellee on that ground."

In the case of Dillon v. Iowa Central Ry. Co., 118 Iowa 645, 92 N. W. 855, 857, we have another case with very similar circumstances. There the deceased was an engineer of one train which had stopped at a station. He left the engine and was later found injured between two or more cars standing on an adjoining track. We there said:

"A consideration of the question as to whether the evidence fails to show due care for his own safety on the part of deceased, or affirmatively shows contributory negligence on his part, leads to the same result. It must be, as matter of law, contributory negligence, for any person, without reason or excuse for doing so, to go between cars standing on a side track, which, in the operation of the business of the railroad company, may be moved. We do not think it is material whether such person has reason to suppose that the cars will be moved or not. He is bound to know that, in the very nature of things, they are on the track for the purpose of being moved, and is negligent in being between them when they are moved. * * *. But

there is no evidence in this case to indicate that deceased went between the cars for any proper purpose, or any purpose justifying him in incurring the risk involved in doing so.  * * * Giving all the testimony introduced or offered for the plaintiff all the weight to which it can possibly be entitled, we think it shows without question contributory negligence on the part of deceased."

As aiding us in reaching our conclusion, light is thrown on the situation by the cases of McCabe v. M. & St. L. Ry. Co., 188 Iowa 642, 176 N. W. 613, and Texas & N. O. Ry. Co. v. McDonald, 99 Tex. 207, 88 S. W. 201, 203, where that court, under similar circumstances, said:

"There being nothing to prevent the defendant moving the cars at that time, the very fact that there were cars on a track, the business in which they were employed, constituted a warning that the empty ones were at some time to be moved, and that they might as well be moved at this time as at another. But for the fact that plaintiff was under one of them, no better time could have been chosen, and of that fact defendant's servants had no notice. If it be conceded that they were guilty of negligent omissions in moving the engine without signals, we think it unquestionably true that his own contributing negligence was the chief cause of his misfortune. His contention amounts to this: that having thus, without reason and for his own pleasure, placed himself in one of the most dangerous positions he could have chosen, he yet had the right to exact of defendant and its servants the foresight and the clocklike precision of action necessary to discover and save him from the consequences of his own imprudence—a foresight and caution for his protection utterly wanting in his own conduct. Having thus thoughtlessly exposed himself to a danger from which he suffered, and which he could easily have foreseen and avoided, he is not in a position to say that he relied on the defendant's employees to discover his danger and to protect him from it. * * * His case is not better than that of persons who negligently walk, sit, or lie upon railway tracks. These often do not know nor have special reason to expect, that trains will be passing while they are on the track; but of this they take the risk, the very nature of the place warning them of the dangers they incur. The fact that the cars were being used as they were for the purpose of hauling gravel to this place notified plaintiff of the probability of the empty ones being moved so as to cause a

movement of the one under which he sat. In this respect his attitude is the same in principle as those instanced, and, in so far as he so placed himself as to limit the opportunities of himself and of defendant's servants to see his peril, it is worse."

In Oliver v. Iowa Central R. R. Co., 122 Iowa 217, 97 N. W. 1072, 1074, this court said:

"A person may be in a position of danger without negligence on his part; for instance, if he be overcome by some physical force which he could not avoid, and be left in a place of danger, as upon a railroad track, he would most clearly not be guilty of negligence in being there. But if a person sui juris voluntarily and unnecessarily place himself in a position of known peril, it would be most unjust to say that he should be entirely relieved from the consequences of his own act, and that another, no more negligent than he, should fully compensate him for the injury he received. Moreover, such a rule would entirely demolish the doctrine of contributory negligence, and, if adopted in this case, would require the overruling of a long line of cases holding exactly the reverse principle. Beginning with the early cases, we have consistently held that there can be no recovery where there was contributory negligence, no matter how negligent the defendant might have been. It is unnecessary to review these cases, or to cite all of them."

The appellant seeks to meet this line of authority by claiming that there is a difference between a potential and an immediate danger. We are unable to find such distinction made in any of the authorities, and especially in the Iowa authorities on this proposition.

It is further argued by the appellant that the decedent had a right to believe and rely upon the fact that the engineer would obey the statute and sound the whistle and ring the bell, and in determining whether or not he was guilty of contributory negligence, this fact must be taken into consideration, and the further fact that he was relying thereon. Reliance is placed by appellant on the cases of Lonergan v. Illinois Central Ry. Co., 87 Iowa 755, 49 N. W. 852, 53 N. W. 236, 237, 17 L. R. A. 254; Ward v. C., B. & Q. Ry. Co., 97 Iowa 50, 65 N. W. 999; Heise v. C. G. W. Ry. Co., 141 Iowa 88, 119 N. W. 371, 372; and Warn v. C. G. W. Ry. Co., 149 Iowa 450, 126 N. W. 1104, 31 L. R. A. (N. S.) 667.

In the Lonergan case the plaintiff was engaged in unloading

corn from his wagon into a crib upon the defendant's depot grounds near the railway track and near a highway crossing over defendant's railroad. The horses attached to the wagon became frightened by the passing of an engine on defendant's railroad and ran away. Plaintiff was thrown from the wagon and injured. The holding in that case was that defendant's failure to ring the bell was negligence on the part of the company. The question of contributory negligence was not discussed in that case, and, after stating that the plaintiff was on the railroad grounds by invitation, the court said:

"It is an absolute necessity that they should be there to transact their business; otherwise, the railroad company could not transact the business of a common carrier."

Further in the opinion it is said:

"It is not to be denied that there is a conflict of authorities upon the question, but it will be seen, by an examination of all the cases, that in most of them which hold that a failure to give the signal is not negligence the plaintiff bore no relation to the company whatever. He was either upon the railroad tracks without permission, or engaged in no duty to the railroad company, but was in a place of danger of his own choice, and for his own convenience or pleasure. * * * We do not hold that a railroad company may incur liability for damages occasioned by the frightening of teams engaged in all kinds of service and employment near the railroad track because no signal is given at public crossings, by reason of which teamsters fail to secure their teams when the cars approach, and it is not necessary in this case to hold that it is negligence to fail to give the signals to travelers upon highways running parallel with the railroad. We desire to limit the general statements of the foregoing opinion to the particular facts of this case, and our holding is that the relation between the defendant and the plaintiff was such that the plaintiff had the right to rely on the defendant obeying the law in reference to giving the signal."

The question discussed in the Ward case, supra, was equally a question of whether a failure to ring the bell was negligence on the part of the company and the proximate cause. There is no question of contributory negligence raised in that case.

The case of Heise v. C. G. W. Ry. Co., supra, involved the question of killing of certain cattle on a railroad crossing. Reference

is made therein to the holding in the Lonergan and Ward cases, supra, and the following explanation made:

"Those who are at or near a crossing and in such situation with reference to the railroad track that the company owes them some duty of warning may complain of the breach of the statutory duty as to signals at such crossing, but as to all other persons the failure to give the statutory signals is too remote a cause on which to base a recovery."

What is said in the last two cases cited in relation to this matter may be said of Warn v. C. G. W. Ry. Co., supra.

It is to be remembered that what is said in the cases above cited is all said in relation to the question of what constitutes negligence on the part of the railroad company, in the fact situation in each case. We do not believe that under the facts in this case there was a duty on the part of the railroad company to anticipate that there was a man or men sitting under the coal cars, and we conclude, therefore, that there is nothing in this contention of the appellant.

One other question is raised in the case and that is that the appellant filed an affidavit of newly discovered evidence as a basis for a new trial. The substance of it is that the affiant says:

"I was generally working in and about said cars and relied on the railroad company sounding the whistle and ringing the bell when they would come in with their engines and cars over the highway in front of the plant, and it was customary on the part of the railway company to sound this whistle and keep the bell ringing so that we would be notified of when they were coming and get the cars in shape and ourselves out of danger when the moving engine and cars came in contact with those on the track."

The petition accompanying this affidavit alleges that the newly discovered evidence is

"Material to the issues and was not discovered by plaintiff until after the trial, although he used due diligence in looking up the evidence and witnesses prior to the hearing and trial in said cause."

Section 12788, Code 1931, reads as follows:

"Where the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the

term at which the verdict, report of referee, or decision was rendered or made, the application may be made by petition filed", etc.

Among the grounds for a new trial found in section 11550 is:

"7. Newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial."

These statutes have been construed many times, and especially in the cases of McCaulley v. J. I. Case Threshing Machine Co., 151 Iowa 305, 131 N. W. 1; Roziene v. Wolf, 43 Iowa 393; Mayer v. Hamre, 162 Iowa 662, 144 N. W. 334; Stilwell v. Stilwell, 186 Iowa 177, 172 N. W. 177.

Under the aforesaid sections of the statute, as construed in the above cases, the district court was right in overruling the motion for a new trial.

Appellant also urges that so long as the petition and affidavit for a new trial, above referred to as to newly discovered evidence, were not denied, the facts stated should be taken as true.

Section 12789, Code 1931, provides:

"The facts stated in the petition shall be considered as denied without answer, and tried by the court as other actions by ordinary proceedings."

With the knowledge of all of the facts and circumstances heretofore set out, the plaintiff's decedent remained under the car where the slightest movement of the car was bound to seriously injure him, and while in many cases we have said that under the facts therein stated contributory negligence was for the jury, yet we are abidingly satisfied that, under the fact situation in this case, reasonable minds could not disagree that, as a matter of law, plaintiff's decedent was guilty of contributory negligence. The district court ruled thus and we think rightly so.—Affirmed.

KINDIG, C. J., and EVANS, DONEGAN, CLAUSSEN, STEVENS, and ANDERSON, JJ., concur.