99 So.2d 621 (1958)
SEABOARD AIR LINE RAILROAD COMPANY and R.H. Williams, Appellants,
v.
Jesse H. BRANHAM, Appellee.
No. 57-110.
District Court of Appeal of Florida. Third District.
January 9, 1958.
Rehearing Denied January 31, 1958.
*622 Smathers, Thompson & Dyer and L.S. Bonsteel, Miami, for appellants.
Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellee.
PEARSON, Judge.
The Seaboard Air Line Railroad Company and R.H. Williams, defendants below, appeal from a final judgment based upon a jury verdict. The Seaboard Railroad operates a large freight yard in Jacksonville, Florida. This yard is referred to as the Hogan Street freight yard and is located approximately one block from a busy section of downtown Jacksonville. The defendant R.H. Williams was the *623 yard conductor, employed by the defendant railroad company at the above yard and at the time of the accident which is the subject matter of this cause. The appellee was injured in the Hogan Street yard when the last car of a freight train was backed upon him.
The sole issue on appeal is whether the trial judge's denial of defendants' motion for directed verdict was error. Plaintiff was standing upon the track with his back to the unlighted train. No warning of the movement of the train was given and no member of the train crew was in the vicinity. The plaintiff entered the freight yard as a licensee and although at the moment of the impact he had exceeded the purpose of the license, in that he was voiding, the defendants owed to him a duty to warn him of any dangerous condition not open to ordinary observation, the breach of which duty was a contributing cause to the injury. The judgment is therefore affirmed.
The factual basis upon which the trial judge acted when he denied the motion for directed verdict must be set forth in the light most favorable to the plaintiff; inasmuch as a party moving for a directed verdict admits for the purposes of the motion not only the facts adduced but also every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from those facts. Gravette v. Turner, 77 Fla. 311, 81 So. 476; Ehrens v. Miami Transit Co., 155 Fla. 394, 20 So.2d 261.
The Hogan Street freight yard is bounded on the north by Bay Street although Bay Street is not contiguous to the yard, on the south by Water Street, on the east by Hogan Street, and extends westward for many blocks. Clay, Pearl and Julia Streets, all of which are a part of downtown Jacksonville within one or two blocks, terminate at the north side of the yard. Aerial photographs and an engineer's survey which were introduced into evidence demonstrate that the defendant railroad has had the good fortune to have a great industrial city grow up around its freight yard. Located in the heart of this city, the yard is immediately adjacent to the busy waterfront area of the St. Johns River port on one side and downtown Jacksonville on the other. The yard was open to public ingress and egress at every point where a freight shed or other service building did not impede progress. As would be expected, in a thriving metropolitan area, the general public had walked through, in, and about the yard for many years.
Plaintiff, upon the evening in question, at a time after sundown, but before it was completely dark, was watching a boat dock at a wharf on Water Street, immediately south of the freight yard. He suffered from a kidney condition and at that time he suddenly had to urinate. Since there was a lady in the group of spectators, plaintiff walked across Water Street and took a path that led across the track. After crossing the track he walked up the track so that he passed three box cars. The third and fourth cars were about twelve feet apart and the plaintiff stepped between them to urinate. This "fourth" car was actually the last car of a train consisting of thirty-seven freight cars and an engine. As the plaintiff stood with his back to the "fourth" car, the train was backed, knocking plaintiff down. The train subsequently passed over him, severing plaintiff's legs. The train was backed by an engine which was approximately one-third of a mile away. No warning signal was given. All five members of the train crew were congregated in the cab of the engine, so that no one was at the rear of the train.
The appellants contend that under these facts the plaintiff was a trespasser or licensee to whom the only duty owed by the defendants was to refrain from inflicting wilful or wanton injury after discovering that he was in a position of danger. And therefore, because there was no evidence that the defendants discovered the plaintiff, *624 there was no violation of any duty owed to the plaintiff, and the trial court should have directed a verdict for the defendants.
It is true that there are many railroad accident cases which class a licensee with a trespasser, and we will not undertake a discussion of the facts involved in each of these cases. It is sufficient to state that we feel that the more recent and better reasoned decisions permit a distinction between the position occupied by a licensee upon railroad property and that occupied by a trespasser. A most recent case of the Supreme Court of Florida, although not a railroad accident case, set out the distinctions recognized by the law in general.
"As a licensee, the defendant owed the plaintiff the duty to refrain from wanton negligence or wilful misconduct, and to warn her of any defect or condition known to defendant to be dangerous if such danger was not open to ordinary observation by plaintiff." McNulty v. Hurley, Fla. 1957, 97 So.2d 185, 189.
Fifty-six years ago the Supreme Court of Florida had before it another case arising out of an accident in a Jacksonville railroad freight yard  Morris v. Florida Cent. & P.R. Co., 43 Fla. 10, 29 So. 541, 546.
In that case it was alleged, in substance, that the defendant maintained its switch yard in a close proximity to a busy part of the city of Jacksonville; that said yard was open to the public in order to more conveniently carry on the business of the defendant, and that the plaintiff, a child, went into the yard and was struck by the rear car of a train which was being propelled backward by a switch engine, without any signal or warning to him and without any brakeman being on the rear end of the cars. The Court reversed an order sustaining a demurrer to the declaration. The reasoning of the Court is so applicable to the instant case that it is quoted in part:
"Conceding that the fourth count does not sufficiently allege the existence at the place of the injury of a public crossing of the defendant's tracks, yet we think it states a case for the submission to a jury on the question as to whether the defendant company used all ordinary and reasonable care and diligence called for, demanded, and dictated by the exigencies of the occasion as they are alleged to have existed. * * *. There is no allegation that the defendant inflicted the injury after discovering the plaintiff, or that it was wantonly or purposely done. Under these circumstances, it presents a question for a jury to determine whether, in view of all the surrounding facts and circumstances, such as that the defendant's switch yard was located in a populous city like Jacksonville, that it maintained into said yard and across its tracks an open roadway or driveway leading out to the thoroughfare called `Bay Street,' in said city, of the width of an ordinary street, it was reasonable for the defendant and its servants to anticipate that persons would in all probability, at some time or other, wander into its yard, and be there exposed to danger, and, thus anticipating, whether it was in the exercise of all ordinary and reasonable care and diligence, commensurate with the exigencies of the occasion, in not keeping a barrier or guard of some kind at said opening, or, if so, in kicking back cars across the entrance of said roadway into said yard without signals of warning, and without having a brakeman on the rear of said cars, and without having said cars under the control of either a brakeman or an engine, when propelled backwards at great speed."
The defendant has accepted the benefits of the open yard in the heart of *625 the city and the record is clear that it made no effort to limit the use of its property by the general public. While it cannot be said that the public acquired rights in the property, neither can it be said that all those who walked through and upon the property were trespassers. These persons occupied a position somewhere between that of an invitee and a trespasser and have generally been referred to as implied licensees, and it is held that a duty of some care is owed to such persons. J. Ray Arnold Lumber Co. v. Carter, 91 Fla. 548, 108 So. 815, 46 A.L.R. 1068. See also McCarthy v. Boston & Maine R., 319 Mass. 470, 66 N.E.2d 561, 167 A.L.R. 1250, 1253.
The rule that railroads must exercise ordinary care to discover the presence of an implied licensee whose presence is reasonably foreseeable has been followed in Florida. Florida Ry. Co. v. Sturkey, 56 Fla. 196, 48 So. 34; Georgia F. & A. Ry. Co. v. Cox, 75 Fla. 714, 79 So. 276. In addition section 768.05, Fla. Stat., F.S.A. provides that a railroad shall be liable for any injury to a person by its cars unless the company shall make it clear that their agents have exercised reasonable care under the circumstances. Butler v. Southern Ry. Co., 63 Fla. 95, 58 So. 225; Marianna & B.R. Co. v. May, 83 Fla. 524, 91 So. 553. In view of the testimony before the court that no warning of the backward movement of the train was given and that all five members of the train crew were congregated in the cab, with no one stationed at or near the rear of the train, we can not say that as a matter of law the defendant exercised ordinary care. The court properly left the determination of the question to the jury.
The most striking aspect of this case is the fact that the plaintiff had, at the time of his injury, departed beyond the scope of the implied license which arose from the circumstances. Can it be said that a lookout would have discovered him, since he obviously went into the yard to hide himself? Surely, it cannot be the duty of the railroad to search around and under its cars for those who choose to hide there for purposes of their own. It is therefore suggested that once the plaintiff departed from the implied terms of his license that he again became a trespasser, with no right until discovery. But cf. Loftin v. Dagley, 152 Fla. 831, 13 So.2d 311. This argument has little law but a good deal of sense to support it. We therefore must examine it carefully.
An examination of the testimony reveals that the plaintiff did not hide himself from the train crew, but from those who might be upon the street (three box car lengths away). There was an open space approximately twelve feet in width (as wide as an ordinary room) into which he stepped. It is reasonable to infer from the plaintiff's evidence that he would have heard a blast of the train horn and would have been seen by a trainman at or near the end of the train. If a warning had been given or a trainman stationed anywhere near the end of the train we would have been presented with a different situation. It is difficult for the appellant to argue that a lookout could not have seen the plaintiff when in fact there was no lookout. In spite of the position of the plaintiff it was a permissible and reasonable inference from the evidence at the time of the motion for directed verdict that he would have escaped harm if the defendant had used ordinary care to warn persons who might be upon the track.
We are not convinced that the plaintiff's purpose for being in the switch yard was malum in se, nor has any statute been referred to in this connection. In the absence of proof to the contrary it is not unlawful and it does not follow that his activity involved a loss of the ordinary protection of the law.
Affirmed.
CARROLL, CHAS., C.J., and HORTON, J., concur.