RALPH REASONER, appellant, v. CHICAGO, ROCK ISLAND AND
PACIFIC RAILROAD COMPANY et al., appellees.

No. 49845.

(Reported in 101 N.W.2d 739)

MARCH 8, 1960.

508

I. Joel Pasternak, Connolly, O'Malley & McNutt and Bradshaw, Fowler, Proctor & Fairgrave, all of Des Moines, for appellant.

A. B. Howland, B. A. Webster, Jr., and John G. Fletcher, all of Des Moines, for appellees.

PETERSON, J.—In February 1958 plaintiff's occupation was that of taxi driver in Des Moines. February 11, 1958, about 12:45 a.m., plaintiff received a radio call in his cab to proceed to the Rock Island station to meet the train known as the Rocket arriving from the east. The station is located between Southwest Fourth and Fifth Streets. However, the train is so lengthy that passengers alight all the way from South Second Street to South Sixth Street. Plaintiff parked his taxi on the east side of Third Street just north of the railroad tracks. There were two other taxis parked there.

The Rock Island track situation in the immediate area of its station is as follows: the main track for westbound trains; the main track for eastbound trains; the track known as house track immediately north of the main tracks; and east of Third Street and north of all above tracks, a spur track running from South First Street to Third Street and known as the Prouty spur. At the west end of the spur track is located what is known as a railroad bumper block. It is constructed of dirt and timber with three railroad ties on the east side of the block and is approximately three feet in height and ten feet in width, north and south. Its purpose is to stop any cars being switched on the spur if the engineer does not stop in time, or if the couplings between any cars do not work.

Plaintiff and the two other taxi drivers walked south on Third Street to about the middle of all the tracks and looked toward the east to see if the Rocket was coming. They saw no train so they started back toward the north. The two other taxi drivers returned to their taxis, but plaintiff walked over to the bumper block to answer a call of nature. He walked along the east edge of the block. The north edge was erected against the building immediately to the north of the spur track. Two or three feet east of the block was a preliminary block in the form of a railroad tie across the track.

When plaintiff walked south on the east edge of the block there was a baggage or mail car on the spur track from four to ten feet east of the bumper block. The testimony varied as to its exact location. There was another baggage or mail car farther east.

As plaintiff was approaching the north end of the block area the railroad tie came flying through the air and struck him in the chest, knocking him over. Immediately thereafter the baggage car, which had been parked on the track, struck him and pinned his leg under the stirrup of the railroad car, which is an extension of the car itself. He was pinned there for about 30 to 45 minutes before they could get the car moved. As a result of this regrettable and tragic incident it became necessary to amputate his right leg above the knee.

Immediately prior to plaintiff's entrance on the spur-track area a switch engine and switching crew consisting of the engineer and three flagmen were making up a train consisting of several cars and the two cars on the spur track. They entered the spur track at South First Street and were moving west on the track as plaintiff was walking in on the east edge of the bumper block. A switchman with a lantern was about 120 feet east of him as he was stepping on the track, but plaintiff testified he did not see him.

The trial court submitted the case to a jury and verdict was rendered in plaintiff's favor in the sum of $43,000. Defendant filed motion for judgment notwithstanding the verdict, which was sustained by the trial court. In its order sustaining the motion the trial court held plaintiff was guilty of trespass

on private property and was guilty of contributory negligence as a matter of law. From this order plaintiff has appealed.

In this appeal appellant alleges the trial court erred in sustaining the motion on the two grounds listed.

I. A railroad company, because of the nature of its business, is the owner of two classes of property. One class of property such as the passenger station, baggage room section for receiving baggage, station platform, the tracks on which trains arrive and depart and the area leading from the station to the passenger trains are public in nature. As to such areas the public has complete right of entrance. There are other areas such as switch tracks, roundhouses, repair shops, offices, ticket selling rooms, baggage storage rooms, etc., which are private property and exclusively under the control of the company.

The nature of the entrance of a person upon the property of another can be divided into four categories. 1. Trespasser. 2. Bare licensee. 3. Implied or express licensee. 4. Invitee. Mann v. Des Moines Railway Co., 232 Iowa 1049, 7 N.W.2d 45; Connell v. Keokuk Electric Railway & Power Co., 131 Iowa 622, 109 N.W. 177; Masteller v. Chicago, R. I. & P. Ry. Co., 192 Iowa 465, 185 N.W. 107; Thomas v. Chicago, M. & St. P. Ry., 103 Iowa 649, 72 N.W. 783, 39 L. R. A. 399; Wagner v. Chicago & N. W. Ry. Co., 122 Iowa 360, 98 N.W. 141; Wilson v. Goodrich, 218 Iowa 462, 252 N.W. 142.

The significance of the various categories is as follows:

In Mann v. Des Moines Railway Co., supra (pages 1056, 1057 of 232 Iowa), this court defined a trespasser as: "Speaking generally, a trespasser is one who is not rightfully upon the land or property of another, but enters it without the consent, either express or implied, of the owner or occupier thereof. * * * It is uniformly stated that the owner or holder of the premises owes no duty to the unknown trespasser upon his property save that of not injuring him willfully or wantonly, and to use such reasonable and ordinary care as the circumstances demand, *after his presence on the premises and his peril are known, to avoid injuring him.*" (Emphasis ours.)

From the same case (page 1062) we quote: "A bare licensee enters the land or property of another at his own risk, and assumes the dangers existing or inherent in the property

entered. We have said that it may be stated as a general rule of law that the owner or occupier of real property is under no obligation to make it safe or keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, entering without express or implied invitation. If such a one be injured, no recovery can be had."

The difference between a trespasser and a bare licensee is slight. Under certain conditions the obligation of a property owner as to a bare licensee is slightly more than that to a trespasser.

A licensee by implied invitation is defined in Connell v. Keokuk Electric Ry. & P. Co., supra (page 626 of 131 Iowa), as follows: "A licensee by implied invitation is one who has been invited to enter upon the land either by the owner or occupier of the same by some affirmative act done by such owner or occupant, or by appearances which justify persons generally in believing that such owner or occupant had given his consent to the public generally to enter upon or to cross over his premises, and while such licensee is acting within the scope and limit of such implied invitation he has the lawful right to be where he is so invited."

In Wilson v. Goodrich, supra (page 467 of 218 Iowa), an invitee is described as follows: "An invitee to a place of business is one who goes there, either at the express or implied invitation of the owner or occupant, on business of mutual interest to both, or in connection with the business of the owner; while a licensee is one who goes on the property of another, either by express invitation, or with implied acquiescence, solely in pursuit or furtherance of business, pleasure, or convenience of the licensee."

Appellee contends plaintiff was a trespasser. The position of appellant is that he was an implied licensee. To sustain this position plaintiff's counsel contend that he came under a well-known and well-established exception to the general rule as to a trespasser.

The exception is that in certain cases pathways or other indications of usage have been established. This is accompanied by failure to raise objection by a railroad company or other owner of property to their use. This establishes a foundation

for a person to go upon or cross such property as an implied licensee. Calwell v. Minneapolis & St. L. Ry. Co., 138 Iowa 32, 115 N.W. 605; Clampit v. Chicago, St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673; Thomas v. Chicago, M. & St. P. Ry., supra; Tarashonsky v. Illinois Central R. Co., 139 Iowa 709, 117 N.W. 1074. We will examine these cases to see whether the situation and circumstances surrounding plaintiff's injury are comparable to this exception.

In Calwell v. Minneapolis & St. L. Ry. Co., supra, plaintiff was struck by an engine of defendant. Defendant claimed he was a trespasser. Plaintiff claimed he was an implied licensee. The testimony shows without substantial conflict that a very large number of employees of the railroad traveled between the town and its shops southwest of the point of accident, using for such travel a *well-worn path* which crossed defendant's track at the point of injury. The testimony shows that the use of the path had been continuous for several years and that such use was well known to defendant. There is no evidence tending to show any objection to such use. On that basis the case was submitted to the jury.

In Clampit v. Chicago, St. P. & K. C. Ry. Co., supra, plaintiff was going from his home to his place of employment and was using a *well-established footpath* crossing the railroad track used and occupied by defendant. The footpath was used daily by many persons, and had been used for a long time. It started at the base of a stairway which had been erected by interested persons from the top of the hill down to the footpath. The stairway and path were very noticeable and obvious and the court held that the officers of defendant having permitted their use and making no objection thereto, and erecting no fence or warning sign to stop its use, plaintiff was not a trespasser, but was an implied licensee.

In Thomas v. Chicago, M. & St. P. Ry., supra, a child was upon a bridge and track of defendant which with a *well-worn path* to the bridge had been used constantly for many years by pedestrians in the vicinity as a footway in going to and from the depot, school and village. At the end of the footway was a ladder leading to the bridge above. The ladder could be seen

from the track and the roadmaster of defendant had seen the ladder. There was never any interference by defendant as to its use. It was held the child was an implied licensee.

There are other similar cases, but the above cases are typical of our decisions with reference to a person becoming an implied licensee through long and constant use of pathways across railroad property. The question is whether the evidence offered by appellant in this case measures up to the standard established by decisions of this type.

■■■ In the inception it must be said that there was no well-established pathway of any nature leading around to the east of the bumper block involved in the case at bar. Appellant's evidence of usage is in the form of testimony by six taxi drivers that on occasion they had used the area immediately to the east of the bumper block for the same purpose as it was used by plaintiff. Plaintiff had used the area two times previously. This was the only usage shown by plaintiff with the exception of one baggageman who had worked for the company for thirteen or fourteen years. He testified that during that period he had seen cab drivers go into the area three or four times. As far as usage is concerned this testimony establishes only very isolated usage. The record discloses no daily, noticeable, nor common usage by the public.

Outside of the establishment of a definite and well-defined footpath, as held in the cases heretofore cited, repeated trespasses alone do not establish an implied license. Battin v. Cornwall, 218 Iowa 42, 46, 253 N.W. 842, 844; Fischer v. Johnson, Lane & Co., 106 Iowa 181, 76 N.W. 658. In the Battin case we said: "Repeated trespasses alone or trespasses by many do not ripen into license unless attended by circumstances showing knowledge and acquiescence or of such a character as to charge the owner with knowledge."

There is no evidence in the case at bar that the stationmaster or any official of defendant ever had any knowledge or notice as to the use of the area for the purpose used by plaintiff. In fact, the actions of defendant, and its authorities, were directly to the contrary. Defendant provided a rest room for the public in its depot about 200 feet away. There was a men's toilet in the baggage room building about 100 feet away which

was primarily for the use of railroad employees, but the record shows it was accessible and was used by taxi drivers and others upon request.

Nine cases are cited and discussed by counsel for appellant in support of their position as to plaintiff's status in entering upon defendant's property. Booth v. Union Terminal Ry. Co., 126 Iowa 8, 101 N.W. 147; Tarashonsky v. Illinois Central R. Co., 139 Iowa 709, 117 N.W. 1074; Thomas v. Chicago, M. & St. P. Ry., supra; Low v. Ford Hopkins Co., 231 Iowa 251, 1 N.W.2d 95; Dougherty v. Davis, 48 N.D. 883, 187 N.W. 616; Yakubinis v. Missouri-Kansas-Texas R. Co., 339 Mo. 1124, 100 S.W.2d 461; Eppstein v. Missouri Pacific Ry. Co., 197 Mo. 720, 94 S.W. 967; Erie R. Co. v. Kazanecki, 3 Cir., 10 F.2d 337; Seaboard Air Line R. Co. v. Branham, Fla. App., 99 So.2d 621.

In Booth v. Union Terminal Ry. Co., supra, plaintiff's intestate was killed while crossing defendant's track, which was a sidetrack to the main Cudahy plant in Sioux City. The plant was on both sides of the railroad track and employed more than a thousand men. Hundreds of men crossed the track daily in passing from one part of the plant to the other. Defendant ran a train on the track between the two parts of the plant at eighteen to twenty miles an hour and came out from behind other cars, striking plaintiff's intestate and killing him. The engine sounded no signal and the court held that in view of the obvious use of the alley between two parts of the Cudahy plant by hundreds of people daily the defendant had knowledge of such use and was obligated to give some warning of the approach of its train. The situation is not analogous to the case at bar.

In the case of Tarashonsky v. Illinois Central R. Co., supra, a child five years of age was struck by defendant's train in its railroad yards in Sioux City. In this case a well-marked path was in existence used by people and children generally. The court said at page 713 of 139 Iowa: "The evidence tends to show the existence of a beaten path from the southeast corner of this inclosure, in a southwesterly direction * * * and people, adults as well as children, have customarily for many years previous, passed by way of this path over on the tracks, and

either gone south between the rails of the first track, or diagonally across down to Seventh Street * * *." There was also evidence in the case that the train crew saw plaintiff soon enough to have stopped by use of ordinary care, which question was also submitted to the jury. The case does not support appellant's contention.

We have heretofore considered and quoted from Thomas v. Chicago, M. & St. P. Ry., supra.

The case of Low v. Ford Hopkins Co., supra, has reference to a lady who came into a drugstore and tearoom in Cedar Rapids. While in the store she fell down a stairway leading to the basement. She received injuries from which she died shortly afterwards. The jury decided for defendant. The question was whether she had entered the store for the purpose of purchasing merchandise and was, therefore, an implied licensee or whether she came simply for the purpose of going to a rest room and would, therefore, be a bare licensee. The court submitted the question to the jury and the appeal was on the basis of instructions to which plaintiff-administrator objected. This court affirmed, but the conditions and circumstances of the case are so different from the case at bar that it cannot be considered a precedent for appellant's position.

The Dougherty case is a North Dakota decision rendered in 1922. Plaintiff was a bus driver transporting passengers between two railroad stations. When the train arrived from which he expected to get passengers he stepped out on the station platform. He was struck by a sled which was used to haul baggage between the baggage room and the baggage car. The case is not comparable to the instant case because plaintiff in connection with the hauling of passengers by bus certainly had a right to go upon the station platform. He was in a place open to the public and not on the private property section of the railroad.

The two Missouri cases cited above do not announce principles as to implied licensee which differ from the general principles established in Iowa. The Missouri court in Eppstein v. Missouri Pacific Ry. Co., stated (page 734 of 197 Mo.): "Liability in each instance is predicated on knowledge or notice of the user. Such notice may be proved by the existence of paths

well worn by human feet, and by gaps, stiles and gates appurtenant to such path, by the long-continued going to and fro of people more or less constantly, * * *."

In Erie R. Co. v. Kazanecki, supra, a child was playing upon the tracks and was injured. The court analyzed the situation somewhat in the same manner as we have in our Iowa cases, and does not contradict them. It first stated at page 338 of 10 F.2d: "Whether there was sufficient evidence of permissive use to take the case out of the operation of the general rule of law that a trespasser, though an infant, cannot recover for an injury sustained on the land of another, except when the act is wanton or willful; * * *." The court then said (page 339): "That children for a long time and as a matter of habit played upon the street and over and upon the track. * * * In kind and amount we think it was sufficient to show the defendant's knowledge of the use to which the children put its property and its acquiescence therein, and sufficient to raise on its part a duty of due care and caution."

The case of Seaboard Air Line R. Co. v. Branham, supra, is the only case cited by appellant in which we find some language favorable to appellant's position. In Jacksonville, Florida, plaintiff had gone to a place in defendant's railroad yards immediately adjacent to the water front. Plaintiff was suffering from a kidney condition and he suddenly had an urgent call of nature. He left the group to find a secluded place. He walked into defendant's railroad yards and found a place between two railroad cars which were approximately twelve feet apart. One of the cars was at the end of a thirty-seven car train which suddenly started to move. All five members of the train crew were in the engine. Florida courts have three jurisdictions. Superior Court (similar to our District Court); several Appellate Courts; an intermediate court of limited jurisdiction; and Supreme Court. An Appellate Court in Florida held the circumstances were such that the case should be submitted to the jury. The case is not completely analogous to the case at bar because in this case three crew members were out flagging the switching, including one flagman about 120 feet from where plaintiff entered upon defendant's track. At any rate, since the case differs from the general trend of Iowa

decisions we will not adopt this contrary Florida decision of an intermediate court as the law of our state.

· This court has passed on factual situations somewhat similar to case at bar, and held there was no liability against defendant as a matter of law. Dillon v. Iowa Central R. Co., 118 Iowa. 645, 92 N.W. 855; Masteller v. Chicago, R. I. & P. Ry. Co., supra; Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N.W. 99, 27 A. L. R. 579; Wagner v. Chicago & N. W. Ry. Co., supra; Anderson v. Chicago, R. I. & P. Ry. Co., 216 Iowa 230, 249 N.W. 256; Oliver v. Iowa Central R. Co., 122 Iowa 217, 97 N.W. 1072.

Dillon v. Iowa Central R. Co., supra, involved the death of an engineer. He had brought his freight train into Eldora. There was a track known as a house track adjoining the main track on which some cars were standing. Decedent stepped between the two cars in answer to a call of nature. Another switching crew switched a string of cars against the two stationary cars, causing them to be moved, knocking decedent down and injuring him to the extent that he died. As in the case at bar there was a water closet less than two hundred fifty feet from decedent's engine available for employees. The court said at pages 650, 651 of 118 Iowa: "We do not think it is material whether such person has reason to suppose that the cars will be moved or not. He is bound to know that, in the very nature of things, they are on the track for the purpose of being moved, and is negligent in being between them when they are moved. * * * the evidence is uncontradicted that a water closet was provided for the use of employees * * *. There is nothing to show that deceased did not have reasonable time and opportunity for using this water closet."

The case at bar is analogous to this situation. Defendant had provided two rest rooms available to plaintiff which fact he knew, but ignored.

In Masteller v. Chicago, R. I. & P. Ry. Co., supra, a boy eleven years old came to the railroad station with a newsboy for the purpose of securing a bundle of papers from Des Moines. The train had not arrived so the boys played in the baggage room. In some manner plaintiff upset a large tractor wheel on himself and broke his leg. The court said (pages 468, 469 of

192 Iowa) : "In placing this tractor wheel at the place it did, and in the manner in which the same was placed, the appellee [Railway Company] had no reason to apprehend that the appellant would go to this locality, or would in any way or manner interfere with the tractor wheel. * * * There was nothing whatever about the situation that could cause the railway company to have reasonable ground to believe that appellant, coming to the station for express, would be likely to go to the place where this freight was located. * * * there was no proof of negligence on the part of appellee to warrant submitting the question to the jury."

Keeran v. Spurgeon Mercantile Co., supra, is a case where plaintiff came into a store in the morning and left his coat for the day. A clerk opened a door and placed the coat immediately inside the door. When he came to get his coat the clerk was busy and told him that he had seen where she put it and he could get it. He opened the wrong door and fell down a stairway and was injured. The court said (pages 1242–44 of 194 Iowa) : "To conduct business upon the premises is an invitation to use the premises in the ordinary and usual manner in which business is conducted thereon; * * * *it does not render the owner or occupant of the premises liable for negligence where the invitee is using a portion of the premises to which the invitation has not been extended,* * * *. He was seeking his own convenience, and going for his own accommodation to secure his coat." (Emphasis ours.)

A verdict was directed for defendant which was affirmed on appeal. It is similar to the case at bar in that plaintiff left the portion of defendant's yards to which he was invited and for his own accommodation proceeded on the portion of defendant's property which was private property.

In Wagner v. Chicago & N. W. Ry. Co., supra, plaintiff's intestate, a little boy four years of age, was run over by a train being operated by defendant in its switchyard in Des Moines, receiving injuries from which he died. There were cinder paths along the side of the rails for the use of the public. Plaintiff's intestate was in the middle of the track. The court said at pages 364, 365 of 122 Iowa: "Looking at the case in the most favorable aspect for the plaintiff, the invitation extended to the

public was to use the cinder paths, and not the space between the rails, for the purpose of travel. *As the place where the plaintiff's intestate was injured was private property of the defendant company,* the child had no right to be at any other place than where he was invited to come. \* \* \* the defendant was not required to keep a lookout for persons at any other places than where they were invited to come. Having provided a place for people to walk, it had a right to assume that those who availed themselves of its invitation would confine themselves to the places set apart for their use." (Emphasis ours.)

The Iowa position is supported in almost every other jurisdiction, State and Federal, as evidenced by the following general statement quoted from 75 C. J. S., Railroads, section 918: "\* \* \* They [railroads] ordinarily owe no duty to a trespasser or mere licensee on depot premises except not wantonly or willfully to injure him, and to exercise ordinary care and caution to avoid injury to him after he has been discovered in a perilous position."

It is obvious plaintiff has not placed himself under the exception to the trespass rule making him an implied licensee. No judicial precedent of this court has been cited supporting such a contention. We approve the ruling of the trial court holding plaintiff was a trespasser on private property.

II. Having decided in Division I that defendant was not liable, extended attention to the question of contributory negligence as a matter of law is not necessary. Since the trial court considered it, and counsel for both parties vigorously and ably argued the question, as a matter of precedent we will give it brief attention.

Dismissing a case on basis of contributory negligence as a matter of law is rare. Normally it is a jury question. When, however, the facts and circumstances are clear and undisputed, and the existence of contributory negligence is apparent to all fair-minded and reasonable men, and such is the only reasonable conclusion that can be drawn from the established facts, then contributory negligence exists as a matter of law. Lambrakis v. Chicago, R. I. & P. Ry. Co., 198 Iowa 641, 199 N.W. 994; Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N.W. 360; Rosenberg v. Des Moines Ry. Co., 213 Iowa 152, 238 N.W. 703;

Dillon v. Iowa Central R. Co., Anderson v. Chicago, R. I. & P. Ry. Co., Wilson v. Goodrich, and Oliver v. Iowa Central R. Co., all supra.

 As plaintiff walked on defendant's private property he was walking on the easterly edge of the bumper block. The presence of the block was notice to him that cars could be switched against, the block at any time. Its existence was equivalent to a sign being placed on the spot marked "danger". Plaintiff was an experienced and mature man, thirty-eight years of age. He deliberately moved from a place of complete safety to a place of possible danger. He could have remained on the grounds of defendant, open to the public, in complete safety and proceeded to one of two rest rooms within a comparatively short distance from where he proceeded to a place of danger. Reasonable minds cannot differ as to the fact that plaintiff was guilty of contributory negligence.

In Lambrakis v. Chicago, R. I. & P. Ry. Co., supra, plaintiff's intestate, Leoleos, instead of going around some cars standing on a track, walked in a space which was from 15 to 24 inches between the coupling blocks of two cars. Cars were switched together crushing him between the bumpers; he was instantly killed. A verdict was rendered for defendant which was affirmed. The court said at page 647 of 198 Iowa: "The very proximity of the coupling blocks between which he attempted to pass was a warning of danger. It was obvious that the slightest movement of either car would be likely to injure him. * * * The conclusion is inescapable that Leoleos, of his own volition, moved from a place of safety into a place of danger, without any attempt to ascertain whether the cars were about to be moved. We reach the conclusion that the evidence shows conclusively, as a matter of law, that appellant's decedent was guilty of negligence contributing to his injury."

The decision of the trial court holding plaintiff was a trespasser on private property and also holding that he was guilty of contributory negligence as a matter of law is affirmed.—Affirmed.

All JUSTICES concur.